Jason L. INLOW, Heather N. Inlow, Jeremy H. Inlow, and Sarah C. Inlow, Appellants–Plaintiffs,

v.

HENDERSON, DAILY, WITHROW & DeVOE, a Partnership, Whitney B. Grayson, Grayson & Associates, Paul M. Harrington, The Heartland Insurance Group, and Great–West Life and Annuity Insurance Company, Appellees–Defendants.

No. 49A02–0206–CV–476.

Court of Appeals of Indiana.

April 23, 2003.

Stephen B. Caplin, Jame S. Goldstein, Caplin Park Tousley & McCoy, Marvin J. Frank, Robert M. Hamlett, Frank & Kraft, P.C., Indianapolis, IN, Attorneys for Appellants.

Robert F. Wagner, Dina M. Cox, Lisa Dillman, Lewis & Wagner, Indianapolis, IN, Attorneys for Appellee, Henderson, Daily, Withrow & DeVoe.

Nelson Nettles, John M. Choplin II, Norris Choplin & Schroeder, LLP, Indianapolis, IN, Attorneys for Appellees, Whitney B. Grayson, Grayson & Associates, Paul M. Harrington, and The Heartland Insurance Group.

Mary Jane Lapointe, Leagre Chandler & Millard, LLP, Indianapolis, IN, Raul A. Cuervo (Pro Hac Vice), Richard J. Karpinski (Pro Hac Vice), Jorden Burt LLP, Washington, DC, Attorneys for Appellee,

Great–West Life and Annuity Insurance Company.

## OPINION

BAKER, Judge.

Appellants-plaintiffs Jason L. Inlow, Heather N. Inlow, Jeremy H. Inlow, and Sarah C. Inlow (collectively, "Inlow Children") appeal the trial court's dismissal of their amended complaint bringing suit against a law firm, attorneys working for that firm, insurance companies, and agents of those insurance companies. The Inlow Children brought claims against the law firm of Henderson, Daily, Withrow & DeVoe and eighteen attorneys of Henderson, Daily, Withrow & DeVoe in their individual capacities (collectively, "Henderson Daily"). They also asserted claims against Whitney B. Grayson, Grayson & Associates, Paul M. Harrington, The Heartland Insurance Group, and Great–West Life and Annuity Insurance Company (collectively, "Insurers"). These claims were brought because of harms allegedly caused to Lawrence W. Inlow and his estate, which diminished the value of the estate.

The Inlow Children argue that in a number of capacities they: (1) have standing to maintain their claims, (2) are real parties in interest, and (3) have stated claims that avoid dismissal under Indiana Trial Rule 12(B)(6). The Inlow Children also complain that the trial court erroneously struck Counts IV through VIII of their motion for leave to file amended complaint and erroneously denied their motion to amend the amended complaint by interlineation. They contend that even if the dismissal of their claims, the striking of Counts IV through VIII of their motion for leave to file amended complaint, and the denial of their motion to amend the amended complaint by interlineation were proper; they are still entitled to reasonable time to seek the ratification, joinder, or substitution of the successor trustee and successor personal representative according to Indiana Trial Rule 17(A)(2).

Aside from their claims brought as assignees of the successor personal representative and attempted claims as assignees of the successor trustee, each claim the Inlow Children assert ultimately arises from their status as heirs. The Probate Code carefully limits the intrusion of heirs and other interested persons into the personal representative's administration of an estate. As heirs, the Inlow Children have not followed the procedures outlined in the Probate Code for intervening in the administration to sue alleged tortfeasors of the decedent and his estate. Moreover, the Inlow Children may not claim capacity to sue as assignees of the successor trustee for harms befalling the estate. A successor trustee has no authority to sue for harms resulting to an estate and, therefore, has no authority to assign such claims. Finally, the assignments made by the personal representative and the successor personal representative were invalid and are no basis for suit against Henderson Daily and the Insurers.

We, therefore, affirm the trial court's: (1) dismissal of each count of the amended complaint, (2) denial of stricken Counts IV through VIII of the motion for leave to file amended complaint, and (3) denial of the motion to amend the amended complaint by interlineation. We deny the Inlow Children's request to remand this cause to the Marion Superior Court for the ratification, joinder, or substitution of the successor personal representative through Trial Rule 17(A). Any further action they take must be within the bounds of the Probate Code as we will explain more fully below.

### FACTS

Lawrence W. Inlow created the Lawrence W. Inlow Irrevocable Children Trust

(Inlow Trust) for the benefit of his children and named himself trustee. As trustee of the trust, he purchased an insurance policy from Great–West Life and Annuity Insurance Company (Great–West Life) on July 8, 1996. The policy designated the trustee of the Inlow Trust as the beneficiary of the policy. In the event of Lawrence's death, Great–West Life was obligated to pay ten million dollars to the successor trustee who was yet unnamed.

On May 21, 1997, Lawrence Inlow died intestate, leaving six heirs: Anita Inlow, his second wife; Jesse Inlow, Lawrence and Anita's minor child; and the four plaintiffs to this action who are children of Lawrence's first marriage. After Lawrence's death, Karl Kindig was appointed personal representative of the Inlow Estate. Henderson Daily provided legal services to Kindig in his capacity as personal representative. Kindig later executed an assignment in favor of the Inlow Children of all claims belonging to the personal representative against all other persons, including any claims against Henderson Daily. With the consent of the Inlow Children, the successor personal representative agreed to pay Kindig $200,000 allegedly for his services to the Inlow Estate. The probate of the Inlow Estate is still pending in the Hamilton Superior Court as of the filing of the appellate briefs in this action.

On October 10, 2001, the Inlow Children filed an amended complaint for damages. In their amended complaint, the Inlow Children asserted claims of negligence, "intermeddling," and legal malpractice against Henderson Daily. They asserted these claims for harms allegedly caused to the Inlow Estate to the detriment of their intestate shares of the property. Though the trial court permitted the three claims against Henderson Daily, it struck five others the Inlow Children attempted to assert.

As for the insurance companies and agents, the Inlow Children brought claims of negligence and breach of contract, despite the fact that Great–West Life had paid the policy proceeds in full. In addition to claims brought in the amended complaint, the Inlow Children contend that they were entitled to assert claims assigned by the successor trustee of the Inlow Trust. They attempted to assert these assigned claims, not as part of their amended complaint, but in a motion to amend the amended complaint by interlineation. The trial court denied their motion to amend the amended complaint by interlineation.

In response to the amended complaint, Henderson Daily and the Insurers filed separate motions to dismiss. Among other arguments, they contended that the Inlow Children lacked standing to bring claims, the probate court had exclusive jurisdiction over certain claims, the Inlow Children were not real parties in interest, and the Inlow Children failed to state claims upon which relief could be granted. The trial court granted the motions to dismiss with prejudice in favor of all the defendants. The Inlow Children now appeal.

## DISCUSSION AND DECISION

### I. Standard of Review

■ Although the defendants made other arguments in favor of dismissal in addition to Indiana Trial Rule 12(B)(6), we need only resolve this appeal on the basis of that rule. "[A] complaint may not be dismissed for failure to state a claim upon which relief can be granted unless it is clear on the face of the complaint that the complaining party is not entitled to relief." *City of New Haven v. Reichhart,* 748 N.E.2d 374, 377 (Ind.2001). We review

the pleadings in the light most favorable to the nonmoving party and draw every reasonable inference in favor of that party. *Id.* When reviewing a motion to dismiss for failure to state a claim, this court accepts as true the facts alleged in the complaint. *Id.* We will affirm a successful Trial Rule 12(B)(6) motion when a complaint states a set of facts, which, even if true, would not support the relief requested in that complaint. *Id.* We will affirm the trial court's ruling if it is sustainable on any basis found in the record. *Id.*

## II. Claims Against Henderson Daily

The amended complaint asserted three claims against Henderson Daily. In Count I, the Inlow Children contended that Henderson Daily was negligent in creating and funding the Inlow Trust. According to the facts in the amended complaint, which we accept as true, Lawrence instructed Henderson Daily to prepare a trust agreement that would minimize tax consequences to property benefiting his children upon his death. To fund the trust, Henderson Daily requested the Insurers to issue a policy to the trustee for payment of proceeds in the event of Lawrence's death. Apparently in an effort to minimize certain tax consequences to estate property in the event of Lawrence's death, Henderson Daily, at Lawrence's request, required inclusion of a restrictive provision in the insurance policy. The insurance policy, however, was issued without the restrictive provision.

The amended complaint contained two other counts against Henderson Daily. In Count II, the Inlow Children sued Henderson Daily for "intermeddling" in the administration of the Inlow Estate through its denying and withholding of information the personal representative required to perform his duties. Finally, Count III includes a claim for Henderson

Daily's malpractice in performing legal services for the personal representative.

The Inlow Children also attempted to bring other counts against Henderson Daily in their motion for leave to file amended complaint. Count IV of the motion for leave to file amended complaint advanced a claim for negligent injury to the "Inlow Property." Appellants' App. p. 527. Count V advanced a claim for breach of contract between Henderson Daily and the personal representative, alleging that Henderson Daily had damaged the "Inlow Property." Appellants' App. p. 528. They brought the claim as purported third-party beneficiaries of the contract. Count VI advanced a claim for misapplication of entrusted "Inlow Property." Appellants' App. p. 529. Count VII advanced a claim for criminal conversion of "Inlow Property." Appellants' App. p. 530. Finally, Count VIII advanced a claim for Henderson Daily's deceit and collusion against the probate court, the judge of the probate court, and Inlow Children as parties to the proceedings before the probate court. The trial court struck Counts IV through VIII of the motion for leave to amend the complaint.

### A. Bringing Claims as Heirs

The Inlow Children argue that, despite the ongoing administration of the estate and based on their status as heirs to damaged estate property, they may maintain claims against Henderson Daily. According to the Inlow Children, they may bring suit because they hold title to estate property though the personal representative holds possession of estate property until the administration of the estate is complete. In their view, the Inlow Children have authority independent of the personal representative to maintain a suit while the estate undergoes probate administration.

■ Were it not for the text, structure, history, and purpose of Indiana probate

law we might agree.[1] We think the most straightforward way to sort out their claims brought as heirs is to begin with the statute authorizing the personal representative to maintain suit for demands due the decedent or the estate. Under Indiana Code section 29–1–13–3, a personal representative "shall have full power to maintain any suit in any court of competent jurisdiction ... for any demand of whatever nature due the decedent or his estate." Once this statute is read in light of its placement in the Probate Code, its historical underpinnings, and the purpose of probate law, it becomes clear that the Inlow Children lack the authority to recover damages due to Lawrence or to his estate based on their status as heirs.

The entire statute reads as follows:

> Every personal representative shall have *full power* to maintain any suit in any court of competent jurisdiction, in his name as such personal representative, for any demand of whatever nature due the decedent or his estate or for the recovery of possession of any property of the estate or for trespass or waste committed on the estate of the decedent in his lifetime, or while in the possession of the personal representative; but he shall not be liable, in his individual capacity, for any costs in such suit, and shall have power, at his option, to examine the opposite party under oath, touching such demand.

I.C. § 29–1–13–3 (emphasis added). The Inlow Children argue that "full power" does not mean exclusive power. In their view, a personal representative is granted every power necessary to maintain suit, but his power does not exclude other litigants, including heirs, from bringing suit independent of the personal representative for any demand due the decedent or his estate.

 Their challenge to the meaning of "full power" seemingly invokes principles of statutory interpretation. But not every judicial exposition of a statute amounts to statutory interpretation: "When a statute is clear and unambiguous, we need not apply any rules of construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense." *Poehlman v. Feferman,* 717 N.E.2d 578, 581 (Ind.1999). "If a statute is ambiguous, however, we must ascertain the legislature's intent and interpret the statute so as to effectuate that intent. A statute is ambiguous where it is susceptible to more than one interpretation." *Elmer Buchta Trucking, Inc. v. Stanley,* 744 N.E.2d 939, 942 (Ind.2001) (citations omitted).

The plain meaning of Indiana Code section 29–1–13–3, when read in context with the rest of the Probate Code, requires no resort to special canons of statutory interpretation. The statute grants the personal representative complete authority to maintain any suit for any demand due the decedent or the estate. No corresponding statute grants an heir or creditor the same power. Rather, the entire Probate Code—except provisions that permit dispensing with an administration altogether—considers the personal representative the focal point for overseeing claims on behalf of the estate. This duty arises from the personal representative's general responsibility to collect and manage the estate's assets until the estate is closed.

---

**1.** We are deeply indebted to Judge Sharpnack's dissenting opinion in *Inlow v. Ernst & Young, LLP,* 771 N.E.2d 1174, 1184–88 (Ind. Ct.App.2002) (Sharpnack, J., dissenting), *trans. granted.* His general analysis of the Probate Code and the assignability of the personal representative's claims has helped inform this opinion. Our supreme court granted transfer and vacated *Inlow v. Ernst & Young, LLP* on February 27, 2003.

### 1. Text and Structure of Probate Code Give Exclusive Authority to Personal Representative Not Heirs

Chapter 13 of the Probate Code outlines the authority necessary for a personal representative's collection and management of estate assets. The first section of Chapter 13 grants the personal representative certain rights to the decedent's property: "Every personal representative *shall* have a right to, and shall take, possession of all the real and personal property of the decedent other than allowances . . . ." Ind.Code § 29–1–13–1 (emphasis added). Personal property, as defined by the Probate Code, includes "choses· in action." Ind.Code § 29–1–1–3. A chose in action is "[t]he right to bring an action to recover a debt, money, or thing." *Black's Law Dictionary* 234 (7th ed.1999). This right encompasses both contract- and tort-based claims for damages. *See Picadilly, Inc. v. Raikos,* 582 N.E.2d 338, 340 (Ind.1991) (distinguishing between the assignability of contract- and tort-based choses in action). In short, Indiana Code section 29–1–13–1 gives a personal representative the right to the decedent's contract and tort claims, along with decedent's other property interests. No such authority is given to heirs or creditors.

The third section of Chapter 13, as set forth above, elaborates on the general authority given to the personal representative in the first section. I.C. § 29–1–13–3. Here, the Probate Code establishes the personal representative's authority to maintain any suit "for any demand of whatever nature due the decedent or his estate." *Id.* It makes clear that any claim arising before or after the decedent's death is left to the personal representative to bring. No such authority is given to heirs or creditors.

The fifth section of Chapter 13 permits a personal representative, on order of the court, to "effect a fair and reasonable compromise with any debtor or other obligor, or extend, renew or in any manner modify the terms of any obligation owing to the estate." Ind.Code § 29–1–13–5. Once again, no such authority is given to heirs or creditors.

### 2. Limited Avenues for Heirs, Creditors, and Other Interested Persons

Despite the personal representative's plenary authority to collect and manage the assets of an estate, a few mechanisms in the Probate Code allow for the intervention of heirs and creditors in certain circumstances apart from the personal representative. For instance, any "person interested in the estate" may appear before the probate court and allege "that any person has, or is suspected to have, concealed, embezzled, converted or disposed, of any real or personal property belonging to the estate of a decedent, or has possession or knowledge of any such property or of any instruments in writing relating to such property." Ind.Code § 29–1–13–10. The Probate Code defines "interested persons" as *"heirs,* devisees, spouses, *creditors,* or any others having a property right in or claim against the estate of a decedent being administered." I.C. § 29–1–1–3 (emphases added). The probate court is vested with the authority to "finally adjudicate the rights of the parties before the court with respect to such property." I.C. § 29–1–13–10.

Another means of intervention for heirs and creditors appears in section 16 of Chapter 13. The first half of section 16 outlines the conditions necessary for an interested person (e.g., an heir or creditor) to petition for the collection of indebtedness due the estate:

> Whenever any interested person files with the court having jurisdiction of an

estate a petition showing that such person has reason to believe and does believe that the personal representative of the estate or any other person is indebted to the estate, or that any property is in the possession of the personal representative of the estate or of any other person, and that diligent effort is not being made to collect such indebtedness or to secure possession of such property for the estate, the court shall hold a hearing upon such petition and shall determine what action, if any, shall be taken.

Ind.Code § 29–1–13–16. In sum, if any person is indebted to the estate and the personal representative is not diligently pursuing collection of the indebtedness, then an interested person (e.g., heir or creditor) may appear before the probate court for a determination of what action, if any, is necessary for collection. Indebtedness is defined as the "condition or state of owing money." *Black's Law Dictionary* 771 (7th ed.1999). As so defined, indebtedness would include a claim for damages caused to the decedent or his estate.

The second half of section 16 lists the two basic options available to the probate court when action is necessary to collect indebtedness:

Should the court decide that there is sufficient merit in the petitioner's claim to warrant action, it shall direct the personal representative to take such action as the court deems necessary; provided, however, where the person claimed to be indebted to the estate or having in his possession property belonging to the estate is the personal representative or where the court is of the opinion that the personal representative would not or could not for any reason prosecute such action with sufficient vigor, it shall appoint a special administrator to take such action as it shall direct.

*Id.* In other words, if action is necessary, the probate court either directs the personal representative to collect the indebtedness or it appoints a special administrator to collect the indebtedness.

The litigant should take note of three rules from section 16. First, the probate court—not the litigant—determines whether a petitioner's claim of a person's indebtedness has merit. Second, unless the personal representative either is the indebted person or will not prosecute an action with "sufficient vigor," he is presumed the proper party to collect the indebtedness. Third, if the presumption of personal representative fitness is overcome, then the probate court appoints a special administrator to prosecute the action.

In its focus on the personal representative's presumed authority and responsibility for the estate, to the exclusion of other interested persons, Indiana Code section 29–1–13–16 is in keeping with other provisions of the Probate Code. For example, if the personal representative is failing to perform his duties, any interested person may petition for his removal. Ind.Code § 29–1–10–6. Moreover, any interested person may sue the personal representative for damages to the estate resulting from his failure to discharge his duties. Ind.Code § 29–1–16–1. In furtherance of these actions, the Probate Code allows any interested person to request a verified account of a personal representative's administration. Ind.Code § 29–1–16–3.

In conclusion, the Probate Code specifically circumscribes the instances when heirs may inject themselves into the administration of the estate. The responsibility and duty of maintaining claims, along with the general management of the estate, falls to the personal representative. When an heir believes the personal repre-

sentative is neglecting his duty to the detriment of the estate, the heir must follow the procedures of the Probate Code to rectify the problem. That is, the heir may seek the removal of the personal representative altogether, petition for the collection of indebtedness and the appointment of a special administrator if necessary, or sue the personal representative for loss to the estate. During administration, the heir, however, may not maintain a suit independent of the personal representative and without probate court authority.

### 3. The History and Purpose of Probate Law

■ Indiana's modern probate regime took effect on January 1, 1954. Ind.Code § 29–1–1–2. Case law predating the modern code unequivocally reposed authority in the personal representative to maintain suit to the exclusion of heirs, legatees, or creditors. According to a 1942 Indiana Court of Appeals decision, "actions to recover the personal estate or its value must be brought by the executor or administrator, and not by the heirs, legatees, or distributees." *Baker v. State Bank of Akron*, 112 Ind.App. 612, 623, 44 N.E.2d 257, 261 (1942) (citing 21 Am.Jur., Executors and Administrators, Sec. 904, p. 879). A late-nineteenth-century case announced a similar rule: "So long as there is an administrator, he is entitled to recover all debts due the estate; besides, the heirs can have no right to sue for and recover debts due the estate when such amounts may be needed to make payment to the creditors of the estate." *Magel v. Milligan*, 150 Ind. 582, 586, 50 N.E. 564, 565–66 (1898).

If the modern Probate Code had meant to abolish such a well-established, integral rule of Indiana estate administration, it would have radically altered the entire probate process. It seems odd that such a revolution would have been taken place

without the modern Probate Code anywhere mentioning the overall ascendancy of heirs, creditors, and legatees to the demise of the personal representative. Even stranger is the fact that the duties and authority of the personal representative have been painstakingly specified in the modern Probate Code. On the other hand, heirs, creditors, and legatees are relegated to the status of "interested persons," who have expressly limited avenues of intruding upon the administration of an estate independently of the personal representative. The only way to solve the mystery is to accept the conclusion that, far from completely revolutionizing probate law, the modern Probate Code preserved the personal representative as the focal point for collecting and managing estate assets, including the prosecution of lawsuits on behalf of the estate.

■ The text, structure, and history of Indiana probate law thus point to the preservation of the personal representative's exclusive authority to maintain suit for any demand due the decedent or his estate. So do the purposes of Indiana probate law. One specific purpose is to quell the natural antagonism between a creditor of the estate and a distributee. The personal representative acts as the agent for the benefit and protection of both. "An executor or personal representative is regarded as the trustee or agent appointed by law for the benefit and protection of creditors and distributees. The personal representative of an estate represents the creditors as well as the heirs of the decedent, and the law prohibits the personal representative from preventing bona fide creditors from sharing in decedent's assets." *Mutual Hosp. Servs., Inc. v. Burton*, 695 N.E.2d 641, 644 (Ind.Ct. App.1998) (citation omitted). If an heir or creditor recovered a judgment due the estate or the decedent outside of probate

administration, there would be no efficient mechanism for equitably allocating the fruits thereof to other heirs or creditors.

■ The same principle has been stated more generally: "[O]ne of the basic tenets of public policy governing our Probate Code is the uniform and expeditious distribution of property of a decedent." *Kuzma v. Peoples Trust & Sav. Bank*, 132 Ind.App. 176, 183, 176 N.E.2d 134, 138 (1961); *see also* 1 Debra A. Falender, *Henry's Indiana Probate Law and Practice* § 102, at 4 (8th ed. 1989) ("[T]he procedural phases of the Indiana Probate Code are molded on the principle that the general welfare of the state is best served by the uniform, expeditious distribution of property of a decedent."). We can think of few things less uniform and less expeditious than allowing an heir or creditor to pursue a claim for any demand due the decedent and his estate independent of probate administration. To enforce fair distribution of any recovery and to prevent a defendant's double payment, all other heirs and creditors would be forced to bring suit against the initiating litigant.

The multiplicity of lawsuits resulting in a hypothetical free-for-all probate regime leads us to a related point. An heir or creditor may not avoid the specific avenues of probate administration based on the general doctrine of standing. The Probate Code clarifies the status of estate property during administration:

> When a person dies, his real and personal property, passes to persons to whom it is devised by his last will, or, in the absence of such disposition, to the persons who succeed to his estate as his heirs; but it shall be subject to the possession of the personal representative and to the election of the surviving spouse and shall be chargeable with the expenses of administering the estate, the payment of other claims and the allow-

ance is under IC 29-1-4-1, except as otherwise provided in IC 29-1.

Ind.Code § 29-1-7-23. In other words, during administration of the estate, the personal representative possesses the property and the property may be entirely consumed by the election of the surviving spouse, expenses for administering the estate, the payment of claims, or by allowance. In the end, an heir may not be entitled to any estate property.

■ According to our supreme court, " '[i]n order to invoke a court's jurisdiction, a plaintiff must demonstrate a personal stake in the outcome of the lawsuit and must show that he or she has sustained or was in immediate danger of sustaining, some direct injury as a result of the conduct at issue.' " *Hammes v. Brumley*, 659 N.E.2d 1021, 1029-30 (Ind.1995) (alteration added) (quoting *Higgins v. Hale*, 476 N.E.2d 95, 101 (Ind.1985)). To put it another way, for a plaintiff to have standing his interest "must be a present, substantial interest, as distinguished from a mere expectancy or future, contingent interest." 59 Am.Jur.2d *Parties* § 37, at 442 (2002) [hereinafter *Parties*]. As shown by Indiana Code section 29-1-7-23, expectant heirs have an interest in the assets of the estate, but such interest is future and contingent to the satisfaction of other obligations. Thus, "[a]n expectant heir cannot maintain an action for the enforcement or adjudication of a right in the property the heir may subsequently inherit." *Parties, supra*, § 37, at 443. The Inlow Children may not evade the Probate Code by claiming a general standing to sue as expectant heirs or on any other basis deriving from their potential share of the estate.

■ Equally unavailing is the argument that the Inlow Children are real parties in interest. Standing refers to

"whether a party has an actual demonstrable injury for purposes of a lawsuit." *Hammes*, 659 N.E.2d at 1029. "A real party in interest, on the other hand, is the person who is the true owner of the right sought to be enforced. He or she is the person who is entitled to the fruits of the action." *Id.* at 1030 (citation omitted). Expectant heirs are not necessarily entitled to the fruits of a lawsuit brought for injury to the decedent or his estate. Thus, the Inlow Children may not act as real parties in interest. The implications of the trial rule governing the substitution of real parties in interest are discussed below. *See infra* Part V.

### 4. Conclusion

Therefore, we conclude that the Inlow Children as heirs did not have the authority to bring claims against Henderson Daily for demands due Lawrence or his estate. The trial court properly dismissed Counts I, II, and III against Henderson Daily brought by the Inlow Children according to their status as heirs and according to various other capacities which ultimately depended on their status as heirs.

Likewise, the trial court properly struck Counts IV through VIII of the motion for leave to file amended complaint. Each stricken count relied ultimately on alleged harms to the estate, which purportedly affected the shares the Inlow Children stand to acquire at the final distribution of the estate. The Inlow Children may not avoid this conclusion by asserting their right to sue in various other capacities such as third-party beneficiaries of a contract between Kindig and Henderson Daily. The harm is to the estate property and the Inlow Children are harmed only to the extent the estate is harmed. In essence, each count of the amended complaint, as well as Counts IV through VIII of the motion for leave to file

amended complaint, are counts brought by the Inlow Children as heirs to the Inlow Estate. As such, Counts IV through VIII would have deserved dismissal had the trial court not stricken them at the outset. Thus, the trial court committed no error in striking Counts IV through VIII from the motion for leave to file amended complaint.

### B. Bringing Claims as Assignees of the Personal Representatives

The Inlow Children, in the alternative, bring claims against Henderson Daily as assignees of Kindig, who was the Inlow Estate's former personal representative, and as assignees of Fifth Third Bank, which is the estate's successor personal representative. The assignment purported to convey "all of the right, title and interest of the Estate, and Personal Representatives thereof, in and to all claims, choses in action or rights of action against any person, firm, corporation or other entity which the Estate and/or Kindig has or may have." Appellants' App. p. 536. Kindig received $200,000 from the successor personal representative as a result of the assignment. Moreover, the Inlow Children covenanted not to sue Kindig for any act he performed as personal representative of the estate. The probate court approved of the assignment.

We believe the assignment was invalid. First, Kindig, the Inlow Children, and Fifth Third Bank acted outside the structures established by the Probate Code for holding the personal representative accountable to his fiduciary duties. One provision allows an interested person to petition for the removal of a personal representative when he is failing to perform his duties. I.C. § 29–1–10–6. Such removal can be accomplished without resort to a covenant not to sue the personal representative. Moreover, if the personal representative is failing to prosecute a

meritorious claim, an interested person may petition the probate court to appoint a special administrator to handle such a claim. Unlike assignees, a special administrator has to make an accounting to the probate court on the termination of his authority and is subject to the "law and procedure" relating to personal representatives. Ind.Code § 29–1–10–15. A special administrator, therefore, would be required to act as fiduciary for both Inlow Estate creditors and heirs. *See Mutual Hosp. Servs.*, 695 N.E.2d at 644.

Judge Sharpnack "recognize[d] that a personal representative could, with court approval, distribute to an heir by assignment an asset of the estate as a partial distribution to be credited against the heir's share of the total net estate." *Ernst & Young*, 771 N.E.2d at 1188 (Sharpnack, J., dissenting). He cited Indiana Code section 29–1–17–1 in support. Subsection (b) of that provision permits distribution "to persons entitled thereto of such items of property" as "are perishable in nature," "would materially depreciate in value if distribution were delayed," or "would necessitate the expenditure of estate funds for storage or preservation if not distributed." I.C. § 29–1–17–1(b). We note that subsection (b) neither specifically incorporates nor definitively excludes choses in action as items of property susceptible to partial distribution to heirs. Under these circumstances, we need not decide to what extent Indiana Code section 29–1–17–1(b) authorizes assignment of claims belonging to a decedent and his estate because its procedures for partial distribution of property were not followed here.

Second, the Inlow Children's covenant not to sue Kindig in exchange for his resignation—which covenant is found in the same agreement as the $200,000 payment allegedly made for services Kindig performed as personal representative—has the unmistakable appearance of self-dealing and, hence, impropriety. *Williamson v. Williamson*, 714 N.E.2d 1270, 1274 (Ind. Ct.App.1999) (noting that the policy behind prohibiting a personal representative from self-dealing is "to eliminate any hint of impropriety or fraud"), *trans. denied.* Kindig has a fiduciary duty *both* to creditors and to heirs. *See Mutual Hosp. Servs.*, 695 N.E.2d at 644. If Kindig failed to exercise due care in his administration of the estate, the entire estate is harmed to the detriment of both creditors and heirs. He may not escape his liability to the estate by selling off estate claims to heirs. In short, it is clear from the face of the complaint, which included the attached assignment agreement, that the Inlow Children as assignees of claims were not the proper parties to bring these claims. *See Reichhart*, 748 N.E.2d at 377. Therefore, the trial court did not err in dismissing these counts purporting to assert claims through assignment of the personal representative.

### III. Claims Against the Insurers

■ On appeal, the Inlow Children maintain that the Insurers are responsible for the "diminished value of the Inlow Children's share of the Estate by the amount of Federal Estate tax that was paid by the Estate on account of the [insurance] Policy." Appellants' Br. p. 45. In response to the Insurers' argument that only the trustee could bring suit against them, the Inlow Children assert, "The Inlow Children have always alleged, in the Pre–Mortem Claims, that the damages occurred because the Inlow Property in the Estate suffered a diminution in value from paying taxes incurred because of the Appellees' breaches." Appellants' Br. p. 53. According to their argument, they sue for damage to the estate and not for damage to the trust:

Assuming for purposes of argument that the Trustee was the proper party to bring a lawsuit against the Attorneys for malpractice or the Insurers for their negligence, the damages suffered were to property held by the Estate and not the Children's Trust. The acts of the Appellees *reduced the assets of the Estate* by increasing the overall Estate taxes, while leaving the Trust assets intact. ... The Trustee in fact had no standing to sue the Attorneys or the Insurers, because the Trust property had sustained no damage.

Appellants' Reply Br. p. 15 (emphasis in original) (citation omitted). Even if there were a colorable claim against the Insurers, it would be for harms the Insurers committed against the Inlow Estate, not the Inlow Trust. Hence, the same reasons the Inlow Children may not maintain claims against Henderson Daily apply to the Insurers with equal force. The trial court correctly dismissed the claims against the Insurers.

### IV. Motion to Amend the Amended Complaint by Interlineation

The trial court, moreover, correctly denied the Inlow Children's motion to amend the amended complaint by interlineation. By interlineation, the Inlow Children attempted to assert claims, which were allegedly assigned by the successor trustee, against Henderson Daily and the Insurers. The harm, as the Inlow Children unequivocally asserted, is to the Inlow Estate. The successor trustee has no authority to pursue claims for alleged harms committed against the Inlow Estate. Correspondingly, the successor trustee has no power to assign such claims.

### V. Inapplicability of Trial Rule 17(A)

We concluded above that the Inlow Children did not have standing and were not real parties in interest. *See supra* Part

II.A.3. Our rules of trial procedure promote the participation of the real party interest in litigation. In part, Trial Rule 17(A) provides:

Every action shall be prosecuted in the name of the real party in interest.

(1) An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought, but stating his relationship and the capacity in which he sues.

(2)....

No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time after objection has been allowed for the real party in interest *to ratify the action, or to be joined or substituted in the action.* Such ratification, joinder, or substitution shall have the same effect as if the action had been commenced initially in the name of the real party in interest.

T.R. 17(A) (emphasis added).

The Inlow Children request that, if their status as heirs and assignees failed to make them real parties in interest, this court should remand this cause to the Marion Superior Court. Once remanded, according to the Inlow Children, the Marion Superior Court should set a reasonable time for the successor personal representative to ratify, join, or be substituted into the action before dismissal. In addressing their argument, we make two observations about Trial Rule 17(A). First, as expressed by the Civil Code Study Commission Comments, Trial Rule 17(A) "leaves the determination of the real party in interest to be ascertained by the prior law

which remains in effect in most cases. Thus problems arising where a receiver or personal representative fails to bring suit or does so improperly are governed by statutory or common-law rules." Civil Code Study Commission Comments to Rule 17, *reprinted in* 2 William F. Harvey, *Indiana Practice: Rules of Procedure Annotated* 212 (3d ed.2000). To illustrate its point, the Commission cited both the predecessor statute to Indiana Code section 29–1–13–3 (giving personal representative full power to maintain any suit in any court of competent jurisdiction for any demand of whatever nature due the decedent) and the predecessor statute to Indiana Code section 29–1–13–16 (allowing interested persons to petition probate court either to prompt personal representative to pursue a claim or to appoint a special administrator to pursue a claim). *Id.* (citing Burns Ind. Stat. Ann. § 7–703 (Bobbs–Merrill 1953 Repl.) and Burns Ind. Stat. Ann. § 7–716 (Bobbs–Merrill 1953 Repl.), respectively). Our second and related observation is that " 'Indiana substantive law ... must be held to control over the procedural liberality contained in T.R. 17(A).' " *Hosler ex rel. Hosler v. Caterpillar, Inc.*, 710 N.E.2d 193, 196 (Ind.Ct. App.1999) (alteration added) (quoting *General Motors Corp. v. Arnett*, 418 N.E.2d 546, 549 (Ind.Ct.App.1981)), *trans. denied; accord* 2 Harvey, *supra*, at 219–20. Thus, Trial Rule 17(A) in large part meant to leave statutory and common law governing personal representatives in effect. Any apparent conflict between the law of personal representatives and Trial Rule 17(A) is resolved in favor of the former's application.

To protect all creditors and heirs, the personal representative has a fiduciary duty to collect and manage assets, including choses in action. The personal representative is also granted authority to maintain suit and, if he fails to prosecute a meritorious claim, a special administrator may be appointed. Given these duties and authority, we fail to see how a personal representative could ratify or join in this action, where the fruits of a recovery for the estate would apparently be split between the estate and the original party plaintiffs. Such an outcome could work to the detriment of creditors of the Inlow Estate.

Likewise, to remand this cause to the Marion Superior Court for the substitution of Fifth Third Bank would allow the "procedural liberality" of Trial Rule 17(A) to overwhelm the Probate Code. As noted above, the Probate Code provides a mechanism for interested persons to prompt the personal representative to pursue a claim on behalf of the estate. *See* I.C. § 29–1–13–16; *supra* Part II.A.2. They must first petition the probate court and let the probate court decide if there is sufficient merit for any further action to be taken. I.C. § 29–1–13–16. If there is sufficient merit to the claim, the probate court either directs the personal representative to pursue it or, under certain circumstances, appoints a special administrator to pursue the claim.

Though it may not seem wise to those who would rush headlong into suspect litigation, there is some merit in patiently following the Probate Code in these matters. The probate court and the personal representative are in the best position to assess, among other things, the strength of a claim, the costs to the estate in pursuing it, and the desirability of closing the estate before certain assets depreciate in value. If Trial Rule 17(A) supersedes the Probate Code under these circumstances, then any heir may avoid the bounds of the Probate Code by filing an action and forcing the personal representative to be substituted into the action. We also note that Fifth Third Bank was aware of the Inlow Chil-

dren's claims against Henderson Daily and the Insurers and chose to allow assignment of the claims. If Fifth Third Bank believed the claims were worth pursuing, it would have prosecuted an action in its role as a fiduciary to creditors and heirs of the estate.

Our decision does not leave the Inlow Children without a remedy. They may petition the probate court either to direct the successor personal representative to pursue these claims or to appoint a personal representative to do so. Provided, of course, a probate court would judge these claims worth pursuing.

### VI. Motions Filed on Appeal After Full Briefing

 On March 21, 2003, the Inlow Children filed with this court their "Verified Motion to Reverse and Remand with Instructions Because of Failure to Disclose Information Which Might Reasonably Raise a Question as to Impartiality." In the motion, they contend that Judge Zore's impartiality might reasonably be questioned on account of campaign contributions made to the Zore for Judge Committee by Henderson Daily and three individual attorneys who were parties to this lawsuit. They also maintain that Judge Zore's impartiality might be reasonably questioned because the treasurer of his campaign committee was Robert J. Shula, an attorney, at that time, with Lowe Gray Steele & Darko. Great–West Life was represented at that time by Lowe Gray Steele & Darko in this action. For relief, the Inlow Children ask us to remand this cause and order: (1) recusal of Judge Zore,[2] (2) reversal of his judgment dismissing their amended complaint, and (3) a rehearing on Henderson Daily's and the Insurers' motions to dismiss the amended complaint.

The Inlow Children attached two documents to their motion. The first document is Zore for Judge Committee's "Report of Receipts and Expenditures of a Political Committee" filed with the Marion County Clerk on *January 15, 2002.* It lists Henderson Daily's $900 contribution to the campaign. That contribution was made five months before the dismissal of the amended complaint on April 30, 2000. The second document is Zore for Judge Committee's "Report of Receipts and Expenditures of a Political Committee" filed with the Marion County Clerk on *October 17, 2002.* It lists the three individual attorneys' contribution of $100 each. Their contributions were made two months after the dismissal of the amended complaint.

We deny the motion for two reasons. First, the Inlow Children assert that they initially became aware of the campaign contributions and Shula's role as campaign treasurer on March 19, 2003. However, the first document shows that that report was filed on January 15, 2002, three months before the dismissal of the amended complaint. They fail to explain what prevented them from discovering this information in time to bring it before the dismissal was granted or at the very least before the case was fully briefed on appeal. Second, no amount of judicial discretion would allow the Inlow Children to continue with their amended complaint against Henderson Daily and the Insurers. The focal point for the collection of claims against the defendants is the successor personal representative, not the heirs. No judge has the authority to rewrite the Probate Code to allow the Inlow Children to bring their claims as heirs or assignees.

### CONCLUSION

We affirm the dismissal of all claims that the Inlow Children brought against

---

**2.** The Inlow Children informed us in an amended motion filed on March 26, 2003, that Judge Zore has recused himself from the case.

Henderson Daily and the Insurers. The facts of the complaint taken as true do not support the relief requested in the complaint. First, the various capacities to sue described in the complaint, apart from the personal representative's assignment, ultimately arise from the Inlow Children's status as heirs. The Probate Code limits the avenues for an heir's intervention. Second, the assignment made by Kindig and Fifth Third Bank was invalid because it was made outside any procedure established by the Probate Code and because it had the appearance of a personal representative's self-dealing to the detriment of the estate. For these reasons also, the trial court correctly struck Counts IV through VIII of the motion for leave to file amended complaint. Finally, the Inlow Children may not sue, as beneficiaries of a trust, for harms caused to the estate. Nor may they assert claims as assignees of the successor trustee for harms allegedly caused to the estate. We deny the Inlow Children's request for remand; their remedies, if they choose to pursue them, are in the probate court.

Affirmed.

RILEY and MATHIAS, JJ., concur.