**MEMORANDUM DECISION**

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 25 2018, 9:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Lisa A. Miller
Boonville, Indiana

ATTORNEY FOR APPELLEES

Erin Bauer
Barber & Bauer, LLP
Evansville, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Lisa A. Miller,

*Appellant-Plaintiff,*

v.

Richard Miller, Individually and as Personal Representative of the Estate of Edward J. Miller, Karen Caldemeyer, Rebecca Schipp, and Clesta Scarborough,

*Appellees-Defendants.*

June 25, 2018

Court of Appeals Case No.
87A05-1706-EU-1320

Appeal from the Warrick Superior Court.
The Honorable Robert R. Aylsworth, Judge.
Trial Court Cause No.
87D02-1503-EU-34

**Sharpnack, Senior Judge**

## Statement of the Case

[1] Lisa A. Miller appeals the trial court's grant of summary judgment in favor of Richard Miller, Individually and as Personal Representative of the Estate of

Edward J. Miller, Karen Caldemeyer, Rebecca Schipp, and Clesta Scarborough (collectively, "the beneficiaries"). She also appeals the trial court's dismissal of her motion for return of nonprobate transfers to the Estate. We affirm.

## Issues

Lisa raises seven issues, of which four are dispositive:

I.    Whether the trial court erred in denying Lisa's Motion to Vacate Judgment.

II.    Whether the trial court erred in granting summary judgment in favor of the beneficiaries on Lisa's challenge to the validity of Edward J. Miller's will.

III.    Whether the trial court erred in ruling in favor of the beneficiaries on Lisa's motion for return of nonprobate transfers to the Estate.

IV.    Whether the trial court erred in failing to hold an evidentiary hearing on the question of standing.

## Facts and Procedural History

Lisa Miller is Edward J. Miller's daughter. Richard Miller is Edward's nephew, and Karen Caldemeyer and Rebecca Schipp are Edward's nieces. Clesta Scarborough was in a relationship with Edward.

Prior to July 2010, Lisa lived with Edward. Edward was hospitalized on June 30, 2010, due to pneumonia and dehydration. On July 12, 2010, Lisa filed a petition in Warrick Superior Court to be named Edward's guardian. The court appointed her temporary guardian pending a hearing. On July 23, 2010, Edward was transferred from the hospital to a rehabilitation facility. He opposed Lisa's guardianship petition. On August 2, 2010, after an evidentiary

hearing, the court denied Lisa's petition, concluding, "based on Mr. Miller's testimony and demeanor the court cannot find a temporary guardian is needed at this time." Appellant's App. p. 41.

[5] On August 27, 2010, while he was still in the rehabilitation facility, Edward executed a new Last Will and Testament (the 2010 Will), revoking a prior will that had named Lisa as a contingent executor and contingent beneficiary of his estate. In the 2010 Will, Edward bequeathed his entire estate to Clesta. If she predeceased him, his estate would go to Clesta's daughter upon his death.

[6] On October 15, 2010, Edward filed a petition for an order of protection with the Warrick Superior Court, asking the court to order Lisa to vacate his residence and to stop contacting him. The court held a hearing and granted Edward's petition, ordering Lisa to move out of the house and to refrain from contacting Edward. Lisa later moved out of the house. Edward was discharged from the rehabilitation facility on October 22, 2010.[1]

[7] On August 21, 2012, Edward executed another Last Will and Testament (the 2012 Will), in which he revoked all prior wills, including the 2010 Will. In the 2012 Will, Edward bequeathed the lesser of 10% of his residuary estate or $5,000 to Clesta, with the remainder to go to Richard, Karen, and Rebecca in equal shares. The will explicitly disinherits Lisa and further names Richard as

---

[1] Lisa claims she filed her own petition for an order of protection in the Warrick Superior Court under Cause Number 87D02-1010-PO-540, alleging Edward abused her. No documents from that cause number were entered into the record in this case.

personal representative of the estate. On the same day, Edward granted Richard a power of attorney over his finances. In addition, Edward had several bank accounts with payable on death designations. In August 2012, he named the four beneficiaries as payors on his checking account, and in March 2013 he named Richard, Karen, and Rebecca as the payors for his savings account. Richard never used his power of attorney to manage Edward's finances.

[8] Edward died on March 18, 2015, aged ninety. The current case began when Richard filed a petition for appointment of personal representative, asking the court to probate the 2012 Will. The court admitted the will to probate and appointed Richard to serve as personal representative. On May 1, 2015, Lisa, by counsel, filed a complaint to contest the 2010 and 2012 Wills, alleging Edward was not competent when he executed them. She later amended her complaint to further allege that the beneficiaries had "undue influence" on Edward, who she claimed executed the wills under "undue duress." Appellant's App. Vol. 2, p. 17. Lisa further filed a motion for return of nonprobate transfers to the estate, challenging Edward's designation of payable on death designations for his bank accounts. The court determined that Lisa's will contest would be heard "separate and apart" from the resolution of her motion for return of nonprobate transfers. *Id.* at 8.

[9] The beneficiaries filed a motion for summary judgment regarding Lisa's will contest and a motion to dismiss and/or summary judgment regarding her motion for return of nonprobate transfers. Lisa filed a response to the beneficiaries' motions. The court held oral argument.

On May 11, 2017, the court granted the beneficiaries' motion for summary judgment as to the will contest. The court stated, "there is no genuine issue of material fact in dispute regarding Edward J. Miller's competency to execute his Last Will and Testament on August 21, 2012." *Id.* at 13. Further, "because the validity of Mr. Miller's 2012 Last Will and Testament . . . has been upheld by the ruling of this court, [Lisa] has no standing to pursue or assert claims regarding any non-probate transfers made by Edward J. Miller prior to his death." *Id.* at 14. "[The beneficiaries'] motion to dismiss [Lisa's] claim regarding any non-probate transfers must be and is hereby granted." *Id.*

Next, Lisa's attorneys withdrew from the case. On May 25, 2017, Lisa filed a pro se "Motion for Reconsideration." *Id.* at 87. She further filed a pro se "Motion to Vacate Judgment" on June 7, 2017. *Id.* at 105. The court denied the motion to vacate, and this appeal followed.

## Discussion and Decision

### 1. Motion to Vacate Judgment

Lisa argues the trial court erred by denying her Motion to Vacate Judgment, claiming she was entitled to prevail by default because the beneficiaries did not file a response. She cites Indiana Trial Rule 8(D) in support of her claim. That Rule provides:

> Averments in a pleading to which a responsive pleading is required, except those pertaining to amount of damages, are admitted when not denied in the responsive pleading. Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided.

*Id.*

[13] The key question is whether Lisa's Motion to Vacate Judgment was a pleading to which the beneficiaries were required to respond. Lisa did not identify the statute or rule upon which she based her Motion to Vacate Judgment. The Motion identifies numerous alleged errors in the trial court's judgment, and we conclude the Motion most closely resembles a motion to correct error under Indiana Trial Rule 59. That rule provides, in relevant part:

> Following the filing of a motion to correct error, a party who opposes the motion *may* file a statement in opposition to the motion to correct error not later than fifteen [15] days after service of the motion. The statement in opposition *may* assert grounds which show that the final judgment or appealable final order should remain unchanged, or the statement in opposition *may* present other grounds which show that the party filing the statement in opposition is entitled to other relief.

*Id.* (emphases added).

[14] The plain language of Trial Rule 59 provides that a party opposing a motion is permitted to file a response but is not required to do so. *See McGrath v. William F. Bane Co., Inc.*, 475 N.E.2d 1198, 1200 (Ind. Ct. App. 1985) (party not required to respond to motion to correct error). As a result, the beneficiaries were not required to respond to Lisa's Motion to Vacate Judgment, and she was not entitled to prevail by default due to lack of a response.

# 2. Summary Judgment – Validity of Will

Lisa claims the trial court should not have granted summary judgment in favor of the beneficiaries, arguing there are factual disputes as to Edward's competency to execute the 2010 and 2012 Wills and as to whether the beneficiaries exerted undue influence over Edward.

Orders for summary judgment are reviewed de novo and require this Court to apply the same standard of review that is applied by the trial court. *AM Gen. LLC v. Armour*, 46 N.E.3d 436, 439 (Ind. 2015). A party is entitled to summary judgment "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). A fact is material if its resolution would affect the outcome of the case, and an issue is genuine if a trier of fact is required to resolve the parties' differing accounts of the truth. *Celebration Worship Ctr., Inc. v. Tucker*, 35 N.E.3d 251, 253 (Ind. 2015) (quotations omitted). All facts and reasonable inferences drawn from the facts are construed in favor of the nonmoving party. *Troxel v. Troxel*, 737 N.E.2d 745, 748 (Ind. 2000).

### a. Testamentary Capacity

Any person of sound mind who is eighteen years of age or older may make a will. Ind. Code § 29-1-5-1 (1953). Every person is presumed to be of sound mind to execute a will until the contrary is shown. *Kronmiller v. Wangberg*, 665 N.E.2d 624, 628 (Ind. Ct. App. 1996), *trans. denied*. To rebut this presumption, it must be shown that the testator lacks mental capacity at the time of executing

the will to know: (1) the extent and value of his property; (2) those who are the natural objects of his bounty; and (3) their deserts, with respect to their treatment of and conduct toward him. *Hays v. Harmon*, 809 N.E.2d 460, 464-65 (Ind. Ct. App. 2004), *trans. denied*.

[18] If the testator is of sound mind to execute the will at the time of execution, it is immaterial what may have been the testator's condition at some other time. *Farner v. Farner*, 480 N.E.2d 251, 259 (Ind. Ct. App. 1985). Evidence of the testator's mental condition prior to and following the date of execution is relevant only as to evidence of mental state when the will was executed. *Id.*

[19] Although Lisa challenges Edward's testamentary capacity to execute both the 2010 and 2012 Wills, we focus on the 2012 Will because it revoked the 2010 Will. Edward executed the 2012 Will on August 21, 2012, at the office of attorney Steven K. Deig. The will signing was witnessed by Robert Rheinlander and Sharon Hester, neither of whom were beneficiaries. Further, none of the beneficiaries were in the room at the time of execution. The 2012 Will is consistent with the 2010 Will in that no provision is made for Lisa in either will. Moreover, the 2012 Will explicitly disinherits Lisa.

[20] Edward was examined by his family doctor, Dr. Bachar Malek, on July 23, 2012, less than a month prior to the execution of the 2012 Will. Dr. Malek examined Edward and noted "no memory changes" and no "impairment in cognition by direct observation, from the medical record and no any [sic] family concern expressed." Appellees' App. Vol. 2, p. 105. He further stated Edward

displayed "normal affect, no recent or remote memory loss. No cognitive impairment noted by exam, normal judgment and insight." *Id.* Dr. Malek diagnosed Edward with several ailments, but none of them were related to mental incapacity.

[21] Dr. Malek next treated Edward on October 16, 2012, after Edward executed the 2012 Will. The doctor again noted Edward did not display any "memory changes" or "impairment in cognition." *Id.* at 107. Instead, Edward displayed normal "memory, concentration, language, and fundamentals of knowledge" with no "recent or remote memory loss." *Id.* Dr. Malek did not diagnose Edward with any mental infirmities.

[22] Lisa did not present any medical records or other evidence from 2012 that conflicted with Dr. Malek's statements. Instead, she provided Edward's medical records from his 2010 hospitalization for pneumonia and dehydration, as well as her own affidavit containing her observations of Edward's mental state prior to hospitalization. The medical records included several doctors' statements. One doctor indicated Edward possibly showed signs of dementia, and another doctor diagnosed Edward with "Alzheimer dementia." Appellant's App. Vol. 2, p. 45; *see also id.* at 58.

[23] The Alzheimer's diagnosis was issued in 2010 and was not substantiated by Dr. Malek, who examined Edward much closer in time to the execution of the 2012 Will. Further, Lisa has not presented any evidence that the diagnosis affected Edward's ability to grasp the extent and value of his property at the time he

executed the will in 2012. We conclude Lisa's 2010 evidence does not establish a genuine issue of material fact as to Edward's testamentary capacity on the day of execution of the will, and the trial court did not err in granting summary judgment to the beneficiaries in relation to Lisa's challenge to Edward's testamentary capacity. *See Hays*, 809 N.E.2d at 466 (affirming grant of partial summary judgment on question of testamentary capacity; vague statement that decedent had occasionally displayed paranoia in the past was insufficient to establish dispute of material fact); *cf. In re Estate of Meyer*, 747 N.E.2d 1159, 1164-65 (Ind. Ct. App. 2001) (appellant established dispute of material fact regarding testamentary capacity by submitting evidence that the decedent had been suffering from symptoms of Alzheimer's disease and strokes on the day he executed a trust document), *trans. denied*. We need not consider whether Edward lacked testamentary capacity to execute the 2010 Will.

### b. Undue Influence

[24] Next, we turn to the question of undue influence. The Court has stated: "Undue influence is the exercise of sufficient control over the person, the validity of whose act is brought into question, to destroy his free agency and constrain him to do what he would not have done if such control had not been exercised." *Hunter v. Milhous*, 159 Ind. App. 105, 123, 305 N.E.2d 448, 459 (Ind. Ct. App. 1973).

[25] In certain relationships, the law raises a presumption of influence upon the subordinate party by the dominant party. *Reiss v. Reiss*, 516 N.E.2d 7, 8 (Ind. 1987). Relationships such as attorney and client, principal and agent, husband

and wife, and parent and child are examples. *Id.* In such cases, if the plaintiff proves: 1) the existence of such relationship, and 2) the dominant party received an advantage from the transaction between the two parties, the law imposes a presumption that the transaction was a result of undue influence by the dominant party. *Id.* At this point, the burden of proof shifts to the dominant party and he must prove that the transaction was at arm's length, and thus valid. *Id.*

By contrast, if there is no applicable presumption arising from a fiduciary relationship, undue influence can be established upon a showing of the imposition of power by one party to deprive the other party of the exercise of free will. *Trent v. Nat'l City Bank of Ind.*, 918 N.E.2d 646, 651-52 (Ind. Ct. App. 2009), *trans. denied*. The plaintiff must establish not only the existence of a confidential relationship in fact but also that the parties did not deal from equal positions. *Carlson v. Warren*, 878 N.E.2d 844, 852 (Ind. Ct. App. 2007).

In the current case, Edward executed the 2012 Will concurrent with granting Richard a power of attorney. The grant of a power of attorney created a fiduciary relationship between Edward and Richard. As a result, Lisa established a presumption of undue influence as to Richard in the execution of the 2012 Will, which disinherited Lisa and named Clesta, Richard, Karen, and Rebecca as heirs.

Richard was not a witness to the 2012 Will and was not in the room when it was executed. Further, it is undisputed in the record that Richard never

exercised his power of attorney over Edward's financial affairs. Finally, even viewing the facts in the light most favorable to Lisa, the record demonstrates Edward and Lisa had a contentious relationship for years before he executed the 2012 Will disinheriting her. Lisa had ample opportunity to pursue discovery as to the circumstances surrounding the execution of the will and the relationship between Edward and Richard as of 2012, but based on the record before us we can only assume she chose not to do so. We conclude there is no dispute of material fact regarding the existence of undue influence by Richard over Edward. *See In re Guardianship of Knepper*, 856 N.E.2d 150, 154 (Ind. Ct. App. 2006) (beneficiary rebutted presumption of undue influence; there was no evidence of bad faith by beneficiary), *clarified on reh'g*, 861 N.E.2d 717 (2007), *trans. denied*.

[29] Turning to Clesta, Karen, and Rebecca, the record fails to establish that any of them had a fiduciary relationship with Edward. Clesta was not Edward's wife, and there is no evidence that the two cohabitated. In addition, Edward did not grant Clesta, Karen, or Rebecca powers of attorney or any other legal authority over him. As noted above, he was not mentally incapacitated at the time he executed the 2012 Will. Based on these facts, Lisa failed to meet her initial burden of proof to show a fiduciary relationship as to Clesta, Karen, or Rebecca, much less unequal dealings. We affirm the trial court's grant of summary judgment on this issue. *See Carlson*, 878 N.E.2d at 852-53 (affirming summary judgment on undue influence; record did not show beneficiaries had a fiduciary relationship with decedent).

# 3. Nonprobate Transfers and Standing

[30] Lisa next claims the trial court erred by granting the beneficiaries' motion to dismiss her motion for return of nonprobate transfers in relation to Edward's bank accounts and an insurance policy, arguing there is ample evidence she had standing to present that motion.

[31] The question of whether a party has standing is purely one of law and does not require deference to the trial court's determination. *Bellows v. Bd. of Comm'rs of Cty. Of Elkhart*, 926 N.E.2d 96, 113 (Ind. Ct. App. 2010). Motions to dismiss for lack of standing may be brought under Indiana Trial Rule 12(B)(6), which governs failure to state a claim. *Huffman v. Office of Envtl. Adjudication*, 811 N.E.2d 806, 813 (Ind. 2004). Where, as here, affidavits and other materials are attached to the motion to dismiss, the motion is treated as one for summary judgment under Indiana Trial Rule 56. *Thomas v. Blackford Cty. Area Bd. of Zoning Appeals*, 907 N.E.2d 988, 990 (Ind. 2009). Our standard of review for a ruling on a motion for summary judgment is set forth above.

[32] The Indiana Probate Code provides that a personal representative "shall have a right to take, and shall take, possession of all the real and personal property of the decedent." Ind. Code § 29-1-13-1. Furthermore:

> Every personal representative shall have full power to maintain any suit in any court of competent jurisdiction, in his name as such personal representative, for any demand of whatever nature due the decedent or his estate or for the recovery of possession of any property of the estate or for trespass or waste committed on the estate of the decedent in his lifetime, or while in the possession of the personal representative; but he shall not be

liable, in his individual capacity, for any costs in such suit, and shall have power, at his option, to examine the opposite party under oath, touching such demand.

Ind. Code § 29-1-13-3. This statute "grants the personal representative complete authority to maintain any suit or demand due the decedent or the estate." *Inlow v. Henderson, Daily, Withrow & DeVoe*, 787 N.E.2d 385, 391 (Ind. Ct. App. 2003), *trans. denied*.

[33] There is no dispute that Lisa is a former heir to Edward's estate and was permitted to challenge Edward's 2010 and 2012 Wills. We have affirmed the trial court's determination that the beneficiaries are entitled to summary judgment as to Lisa's will contest. As a result, we must conclude Richard is the duly appointed personal representative of the estate under the 2012 Will, and he is "the focal point for collecting and managing estate assets." *Id.* at 394. Lisa, by counsel, conceded to the trial court that her standing to challenge the management of the estate's purported assets was contingent upon proving the 2012 and 2010 Wills were invalid:

> The - the matter of bringing assets transferred outside the estate, of course, is a separate question and I would concede at this point, I don't believe Ms. Miller has the legal capacity to do that herself, all she's asking is that the court require the recipients of these transfers to bring it into the estate through the action of the administrator or executor of this – of the estate. However, her position may be such down the line, if we're successful in the will contest action, that she will have the legal capacity to do this and I believe I can assure the court that she'll take whatever steps are necessary to bring those assets back into the estate if, in fact, she is ultimately [sic] has the authorization to do so.

Tr. Vol. 2, p. 14. We conclude the beneficiaries are entitled to judgment as a matter of law on Lisa's claim for return of nonprobate assets because she lacked standing to litigate the management of the estate's assets. *See Baker v. State Bank of Akron*, 112 Ind. App. 612, 623, 44 N.E.2d 257, 261 (1942) ("[A]ctions to recover the personal estate or its value must be brought by the executor or the administrator, and not by the heirs, legatees, or distributees."). We thus affirm the trial court's judgment in favor the beneficiaries as a grant of summary judgment rather than a dismissal under Trial Rule 12(B)(6).

## 4. Absence of Evidentiary Hearing

[34] Lisa argues the trial court erred by not holding an evidentiary hearing on the question of standing in relation to her challenge to nonprobate transfers. As is noted above, the question of whether a party has standing to bring a claim is a pure question of law. Further, we have determined the beneficiaries were entitled to summary judgment as a matter of law on the question of standing. Finally, neither Trial Rule 12(B), which governs motions to dismiss, nor Trial Rule 56, which governs motions for summary judgment, requires a court to hold an evidentiary hearing. We find no error.

[35] Lisa further argues the trial court's failure to hold an evidentiary hearing on the question of standing violated her right to due process under the Fourteenth Amendment as well as her right to freedom of speech under the First Amendment and article one, section nine of the Indiana Constitution. She cites *J.D. v. State*, 859 N.E.2d 341 (Ind. 2007), and *Anderson v. State*, 881 N.E.2d 86

(Ind. Ct. App. 2008), but those cases are factually distinguishable. *J.D.* and *Anderson* involved free speech issues under the Indiana Constitution arising from citizens' interactions with police officers. Those cases do not support Lisa's claim that she was entitled to an evidentiary hearing on a claim that was appropriately disposed of as a matter of law. We find no error.

## Conclusion

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

Vaidik, C.J., and Najam, J., concur.