**In re THE GUARDIANSHIP OF Edwin T. FRENCH, Jr.,**

**Gail French Pheffer, Appellant,**

**v.**

**Edwin T. French III, Appellee.**

No. 49A02–0908–CV–742.

Court of Appeals of Indiana.

June 10, 2010.

Rehearing Denied Aug. 4, 2010.

H. Patrick Callahan, John A. Gardner, Andrew Z. Soshnick, Baker & Daniels LLP, Indianapolis, IN, Attorneys for Appellant.

Richard A. Smikle, Gordon D. Wishard, Brian J. Paul, Ice Miller LLP, Robert W. Geddes, Hume Smith Geddes Green & Simmons, LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROWN, Judge.

Gail French Pheffer appeals[1] the trial court's grant of a motion to dismiss filed by Edwin French III ("Ed III"). Pheffer raises two issues, which we consolidate and restate as whether the trial court erred by granting Ed III's motion to dismiss under Ind. Trial Rule 12(B)(6). We reverse.

Before reciting the relevant facts, it is helpful to address the peculiar procedural posture in which this case comes to us. This case is actually one of two actions addressing essentially the same facts and seeking essentially the same remedies. This action, lower cause number 49D08–9507–GU–551 (the "Guardianship Action") began on July 3, 1995, when Margaret Anne French ("Anne") and Phillip A. Terry (collectively, the "Guardians") petitioned for co-guardianship over Edwin French Jr. ("Ed Jr.") and Ed Jr.'s estate. On April 25, 2001, Ed Jr. passed away, and on July 11, 2001, National City Bank ("National City"), Ed Jr.'s personal representative, filed a Petition for (1) Probate of Self–Proved Will; (2) Issuance of Letters Testamentary; and (3) Supervised Administration, thus commencing cause number 49D08–0107–ES–1578 (the "Estate Action").

Although Ed Jr. is no longer living, the Guardianship Action remains open, and this appeal arises out of that action. On

---

1. This appeal comes to us pursuant to Ind. Trial Rule 54(B) after the trial court determined in its order that "there is no just reason for delay...." Appellant's Appendix at 26.

October 17, 2002, the Guardians filed their "Verified Account of the Guardians' Administration," and on March 4, 2003, after a hearing, the trial court "directed counsel for the [Guardians] to prepare an order approving the [Guardians'] final accounting, payment of guardianship expenses and termination of the guardianship...." Appellant's Appendix at 286. However, the trial court decided to hold open "the [Guardianship Action] for purposes of reaching a judicial or other resolution" of the issues which were before the court. *Id.* The Estate Action has been stayed since March 11, 2002 pending the outcome of the Guardianship Action.

The relevant facts alleged in Pheffer's complaint follow.[2] Pheffer and Ed III are the children of Ed Jr. and Anne. For years, Ed Jr. owned all of the shares of stock in Monarch Beverage Co., Inc. ("Monarch"), consisting of a single class of voting common shares. In 1988, Ed Jr. executed a will which treated Pheffer and Ed III as equals.

Beginning in the early 1990s, Ed Jr. "experienced a decline in mental faculties amid the onset of Alzheimer's disease," and by "July 12, 1993, there was strong evidence of [Ed Jr.'s] neurologically-based cognitive decline." *Id.* at 300. "By February 9, 1994, [Ed Jr.] was diagnosed as having probable presenile dementia of the Alzheimer's type, consistent with a gradually progressive dementia process." *Id.* Ed Jr. "was discouraged from driving and instructed to delegate his affairs and work." *Id.* By January 1995, tests on Ed

Jr. "revealed an atypical dementia with prominent progressive language and behavioral dysfunction *and* impaired memory, social reasoning, verbal memory, visual memory, confrontation, naming, and comprehension of spoken language." *Id.* at 301. Ed Jr.'s dementia was "viewed to be progressive...." *Id.*

Sometime in January 1995, Ed Jr. gifted thirty-four shares of Monarch voting stock to Ed III (hereinafter the "Disputed Shares"[3]), leaving Ed Jr. with 714.06 shares. This gift was equal to about five percent of Monarch's shares and was valued at about $125,000. At the time Ed Jr. made this gift to Ed III, Ed Jr. was mentally infirm.

On August 18, 1995, the trial court issued an order in the Guardianship Action naming the Guardians as co-guardians over Ed Jr. and Ed Jr.'s estate (the "1995 Order"). Pursuant to the 1995 Order, "the Guardians were restricted from selling or otherwise disposing of all or any part of any of the stock owned by [Ed Jr.] in Monarch without notice to all interested parties, the conduct of a hearing, and an order of [the trial court]." *Id.* at 302.

The Guardians sought to develop an estate plan for Ed Jr.'s estate, and the "estate plan was negotiated over an extremely long period of time among the Guardians, [Pheffer], and [Ed III], all of whom were represented by counsel in the negotiations." *Id.* Pheffer argued repeatedly during these negotiations that Ed Jr. had "lacked the requisite competence" to have

---

**2.** Oral argument was heard on this case on May 26, 2010 in Indianapolis. We commend counsel for their well-prepared advocacy.

**3.** In 1996, after the gift to Ed III, Monarch was recapitalized. After recapitalization, Ed III's thirty-four shares entitled him to receive 45.41 shares of Monarch voting stock and 409.09 shares of Monarch non-voting stock. In addition, Monarch's transportation assets

were formed into EF Transit, Inc. by a tax-free spin-off, and Ed III was entitled to receive fifty shares of voting stock and 450 shares of non-voting stock in EF Transit stemming from the thirty-four shares of Monarch that Ed Jr. had gifted him. Thus, the term "Disputed Shares" technically refers to all of these various share amounts.

gifted the Disputed Shares to Ed III, and also that Ed Jr. "was unduly influenced by [Ed III] in compelling him to make the purported gift." *Id.* Pheffer was urged by the Guardians and Ed III to "refrain from filing a complaint or taking legal action" on her claims. *Id.* The Guardians and Ed III indicated that Pheffer's claims "would be redressed through the negotiations of the parties," and also suggested "that a claim or complaint by [Pheffer] would complicate the estate planning process and Monarch's and EF Transit's businesses." *Id.* at 302–303. Pheffer complied and did not file a complaint at that time.

On February 19, 1999, the trial court entered an order (the "1999 Order") approving of an estate plan agreed upon by the parties. As part of the plan, a number of Ed Jr.'s shares of Monarch and EF Transit equal to the Disputed Shares were retained "in the guardianship until further order" of the trial court (the "Reserved Shares"). *Id.* at 303. The Guardians and Ed III continued to assure Pheffer that her claims regarding the Disputed Shares would be addressed, and they continued to insist that were Pheffer to file a complaint it "would complicate Monarch's and EF Transit's businesses." *Id.* Consequently, at the urging of the Guardians and Ed III, Pheffer did not file a complaint. In 2000, the Reserved Shares were transferred to another trust (the "Trust").

The estate planning process continued, and Pheffer and Ed III continued to discuss the Disputed Shares and how to allocate the Reserved Shares. On March 31, 2001, Ed III filed a Motion for Pre–Trial Conference in anticipation of a bench trial in the Guardianship Action that had been set for May 8, 2001. The motion stated that "[w]hile counsel for [Pheffer] has orally raised a claim off the record in this estate, there has never been a formal Complaint filed. Without such complaint, the legal and factual contentions of [Pheffer's] theories are difficult, if not impossible, to ascertain and defend.... [T]he complaining party in this estate should file and serve a Complaint." *Id.* The motion stated that "[a]s a result of the posture of this alleged dispute, it appears that the Court should provide some procedural direction to the parties." *Id.* at 106.

On April 23, 2001, following an attorneys' conference, the trial court ordered Pheffer to file a complaint regarding the Disputed Shares in the Guardianship Action. The trial court also ordered mediation and that the parties "make a good faith effort to resolve the dispute." *Id.* at 109. Two days later, on April 25, Ed Jr. died. On June 28, 2001, Pheffer filed her Complaint *and* Claims Against Trust and Estate, and Objection to Co–Guardian's Final Accounting in the Guardianship Action alleging lack of competence, undue influence, and claims against the Trust and Ed Jr.'s estate.[4]

---

4. As noted above, on July 11, 2001, National City filed a Petition for (1) Probate of Self–Proved Will; (2) Issuance of Letters Testamentary; and (3) Supervised Administration, thus commencing the Estate Action. On December 17, 2001, Pheffer filed a Petition to Compel Recovery of Assets or for Appointment of Special Administrator, as well as a corresponding claim "for recovery of an equal interest in Monarch Beverage Company, Inc. and EF Transit, Inc.," pursuant to Ind.Code § 29–1–13–16 in the Estate Action. Appellant's Appendix at 220. On February 27, 2002, Ed III filed a Motion to Compel Personal Representative to Abandon a Claim & Objection to [Pheffer's] Petition to Compel Recovery of Assets or for Appointment of Special Administrator seeking "a Court Order Requiring the Estate to Abandon its Claim Pursuant to Indiana Code § 29–1–13–8" in order to "protect the estate assets against the costs of proceeding with fruitless and expensive litigation." *Id.* at 195–196. Ed III argued that because the statute of limitations had run on "the alleged fraudulent gift.... any attempt on the part of the estate to recov-

On August 15, 2001, Ed III filed a motion to dismiss in the Guardianship Action pursuant to Trial Rule 12(B)(6) for failure to state a claim and failure to name the real party in interest, and in the alternative, under Trial Rule 12(B)(7) for failure to join a necessary party, namely Ed III. In his motion to dismiss, Ed III noted that he "has been the owner of the [Disputed Shares] for over six (6) years," and stated that the applicable statute of limitations "provides a claimant six (6) years from the date the alleged fraud was perpetrated to file an action." *Id.* at 170–171.

On April 3, 2003, in reaction to Ed III's motion to dismiss, Pheffer filed an amended complaint, naming Ed III, the Trust, the trustees of the Trust, Ed Jr.'s estate, and National City as the personal representative of the estate as defendants. Pheffer subsequently filed a second amended complaint on May 23, 2003, which removed the request for monetary damages from National City as the personal representative of the Estate.[5] The amended complaint contained four counts including: Count I, lack of competence; Count II, Undue Influence; Count III, Fraud; and Count IV, Claims Against the Trust, the Trustees, the Estate, and the Personal Representatives of the Estate. Specifically, Pheffer alleged that: (1) Ed Jr. lacked the requisite competence to make the purported gift to Ed III; (2) Ed III exercised undue influence over Ed Jr. in compelling the purported gift; (3) Ed III fraudulently induced Ed Jr. to make the purported gift; and (4) Ed III is estopped by his own conduct from seeking the dismissal of the amended complaint. The matter was continued numerous times as the parties attempted to mediate the dispute.

On May 1, 2009, Pheffer filed a Memorandum in Opposition to Ed III's Motion to Dismiss Pheffer's Complaint in the Guardianship Action. On June 4, 2009, a hearing was held on the motion. At the

er the gift should be dismissed as time barred," because "the claim is worthless to the estate...." *Id.* at 198. Also, we observe that Ed III's motion, filed in response to Pheffer's Petition, was mistakenly filed in the Guardianship Action rather than the Estate Action.

On March 5, 2002, National City filed a "Response of Personal Representative To: (i) Petition to Compel Recovery of Assets or for Appointment of a Special Administrator; and (ii) Motion to Compel Personal Representative Abandon Claim" in the Estate Action and argued that, pursuant to Ind.Code § 34–11–6–1, "if [Ed Jr.] was mentally incapacitated at the time he [gifted the Disputed Shares].... the limitations period might not have run at the time of [Ed Jr.'s] death." *Id.* at 208, 211. National City asserted that, under these circumstances, it would have until October 25, 2002, to file a claim. On March 11, 2002, the trial court stayed proceedings and has not yet issued a ruling on the matter in the Estate Action.

Finally, on April 9, 2002, Ed III and National City on behalf of Ed Jr.'s Estate entered into a Tolling Agreement stating that:

If the Estate, or any other person or entity appointed by the Court to do so, brings an action against [Ed III] to set aside the purported gift from [Ed Jr.] to [Ed III] of [the Disputed Shares], or any action to recover those shares or the value of the shares, such action shall be deemed to have been commenced for all purposes on March 8, 2002, provided that such action is commenced by the "Termination Date"....

*Id.* at 224. The "Termination Date" was defined in the agreement as thirty days after the date that the trial court rules on Pheffer's complaint regarding the Disputed Shares in the Guardianship Action. The Tolling Agreement also stated that it "shall not revive any claims which, prior to [March 8, 2002], were barred by the applicable statute of limitations." *Id.*

5. The second amended complaint made otherwise similar allegations to the first amended complaint. Also, we note that the parties other than Ed III have not filed a motion to dismiss.

hearing, Ed III argued that "a 12(B) Motion is appropriate here because the complaint establishes a lot of facts which we accept as true, and this is a straight-up statute of limitations issue." Transcript at 20. Ed III argued that Pheffer's amended complaint, which was the first complaint filed against Ed III, was "more than eight years after the gift" of the Disputed Shares. *Id.* at 19. Ed III also argued that Indiana courts "are reluctant to apply equitable estoppel to the benefit of persons who are represented by counsel." *Id.* at 42.

Pheffer argued that Ed III's argument regarding "whether it would be [Pheffer's] disability or [Ed Jr.'s] disability is in the context of a derivative claim," and was therefore "not applicable." *Id.* at 44–45. Pheffer also noted that "out of precaution, [Pheffer] styled both the complaint, the amended complaint, and the second . . . amended complaint as being filed within the guardianship/estate of [Ed Jr.] because [Pheffer] did not want to violate the directive of the Court order" and also to recognize "that two days after the April 23, 2001 order . . . [Ed Jr.] passed." *Id.* at 25–26. Pheffer noted that the trial court "would have jurisdiction over the action no matter how styled." *Id.* at 27. Pheffer argued that Ed Jr. was of unsound mind at the time of the gift, and therefore Ind. Code § 34–11–6–1 tolled the statute of limitations period to file, and that Pheffer "had 18 months after [Ed Jr.'s] death to bring *his* claims." *Id.* at 30 (emphasis added). Pheffer added that her claim was brought only "two months and three days after" Ed Jr.'s death. *Id.*

On June 23, 2009, the trial court granted Ed III's motion to dismiss Pheffer's complaint "as to all claims asserted against [Ed III]." *Id.* at 26. In its order, the trial court concluded that Pheffer's claims "are all governed by a six-year statute of limita-

tion that began to run when [Ed III] acquired the [Disputed Shares] in January 1995. [Pheffer's] fully-informed decision while represented by counsel; [sic] not to file suit before June 2001 does not estop [Ed III] from asserting a statute of limitation defense." *Id.*

The sole issue is whether the trial court erred by granting Ed III's motion to dismiss under Ind. Trial Rule 12(B)(6). A motion to dismiss for failure to state a claim tests the legal sufficiency of the claim, not the facts supporting it. *Charter One Mortg. Corp. v. Condra*, 865 N.E.2d 602, 604 (Ind.2007). Thus, our review of a trial court's grant or denial of a motion based on Trial Rule 12(B)(6) is de novo. *Id.* A court should accept as true the facts alleged in the complaint, and should only consider the pleadings in the light most favorable to the plaintiff, but also draw every reasonable inference in favor of the nonmoving party. *Trail v. Boys & Girls Clubs of Northwest Ind.*, 845 N.E.2d 130, 134 (Ind.2006). A complaint may not be dismissed for failure to state a claim upon which relief can be granted unless it is clear on the face of the complaint that the complaining party is not entitled to relief. *Charter One Mortg. Corp.*, 865 N.E.2d at 604. We will affirm a trial court's granting of a Rule 12(B)(6) motion to dismiss if it is sustainable on any basis found in the record. *City of New Haven v. Reichhart*, 748 N.E.2d 374, 378 (Ind.2001).

Pheffer argues on appeal that "[t]he trial court erroneously dismissed [Pheffer's] claims, which claims were timely filed pursuant to Ind.Code § 34–11–6–1" because "[t]he trial court improperly determined that [Pheffer's] Complaint, as amended, is barred because [Pheffer] was not suffering from a disability on the date of the alleged gift." Appellant's Brief at 9. Pheffer also argues that even if the statute of limitation was not tolled by Ed Jr.'s incapacity, Ed

III "is equitably estopped from now asserting a statute of limitations defense," because Ed III "continuously represented to [Pheffer] that the issue of the Disputed Shares would be resolved through mediation and that it was ill-advised for her to file a formal complaint," and therefore the doctrine of equitable estoppel should apply in order to "prevent [Ed III] from benefiting from fraudulently inducing [Pheffer] to refrain from filing a claim." *Id.*

■ Before examining Pheffer's arguments, however, we initially discuss an argument raised by Ed III in his appellee brief that "under *Inlow* [*v. Henderson, Daily, Withrow & DeVoe*, 787 N.E.2d 385 (Ind.Ct.App.2003), *reh'g denied, trans. denied* ], [Pheffer] has no standing to bring a lawsuit to recover the gifted stock." Appellee's Brief at 10. Pheffer argues that Ed III misreads *Inlow* because Ed III "ignores this Court's detailed analysis in *Inlow*, which holds that '[d]espite the personal representative's plenary authority to collect and manage the assets of an estate, a few mechanisms in the Probate Code allow for the intervention of heirs ... apart from the personal representative,'" and that Pheffer "availed herself of both methods outlined by this Court in the *Inlow* opinion." Appellant's Reply Brief at 3 (quoting *Inlow*, 787 N.E.2d at 392).

As explained in *Inlow*, after a decedent dies, it is "the personal representative's general responsibility to collect and manage the estate's assets until the estate is closed." *Inlow*, 787 N.E.2d at 391. Indeed, Ind.Code § 29–1–13–1 requires that "[e]very personal representative shall have a right to take, and shall take, possession of all the real and personal property of the decedent." Thus, in *Inlow* we recognized that Indiana's Probate Code "considers the personal representative the focal point for overseeing claims on behalf of the estate." *Id.*

However, as Pheffer highlights, "[d]espite the personal representative's plenary authority to collect and manage the assets of an estate, a few mechanisms in the Probate Code allow for the intervention of heirs and creditors in certain circumstances apart from the personal representative." *Id.* at 392. First, Ind.Code § 29–1–13–16 ("Section 16") "outlines the conditions necessary for an interested person (e.g., an heir or creditor) to petition for the collection of indebtedness due the estate." [6] *Id.* Section 16 may be utilized "if any person is indebted to the estate and the personal representative is not diligently pursuing collection of the indebtedness," and it allows for "an interested person (e.g., heir or creditor) [to] appear before the probate court for a determination of

---

6. Specifically, Ind.Code § 29–1–13–16 provides:

Whenever any interested person files with the court having jurisdiction of an estate a petition showing that such person has reason to believe and does believe that the personal representative of the estate or any other person is indebted to the estate, or that any property is in the possession of the personal representative of the estate or of any other person, and that diligent effort is not being made to collect such indebtedness or to secure possession of such property for the estate, the court shall hold a hearing upon such petition and shall determine what action, if any, shall be taken. Should the court decide that there is sufficient merit in the petitioner's claim to warrant action, it shall direct the personal representative to take such action as the court deems necessary; provided, however, where the person claimed to be indebted to the estate or having in his possession property belonging to the estate is the personal representative or where the court is of the opinion that the personal representative would not or could not for any reason prosecute such action with sufficient vigor, it shall appoint a special administrator to take such action as it shall direct.

what action, if any, is necessary for collection." [7] *Id.* at 393.

In addition, Ind.Code § 29–1–13–10 ("Section 10") provides:

> Upon the filing of a petition by the personal representative *or any other person interested in the estate* alleging that any person has, or is suspected to have, concealed, embezzled, *converted* or disposed, of any real or personal property belonging to the estate of a decedent, or has possession or knowledge of any such property or of any instruments in writing relating to such property, the court having probate jurisdiction, upon such notice as it may direct, may order such person to appear before it for disclosure, and may finally adjudicate the rights of the parties before the court with respect to such property.

(Emphasis added). "This section specifically authorizes such proceeding where there is a dispute as to ownership between the estate and another person or persons." Ind.Code § 29–1–13–10 (at Indiana Probate Code Commission's 1953 Comments, § 1310).

In *Inlow,* the plaintiff heirs, in their individual capacity, sued a law firm and individual members of the firm, as well as an insurance company for "harms allegedly caused to Lawrence W. Inlow and his estate, which diminished the value of the estate." *Inlow,* 787 N.E.2d at 388. Specifically, the plaintiffs alleged negligence stemming from "creating and funding the

Inlow Trust," as well as counts for "intermeddling" and malpractice. *Id.* at 390.

We affirmed the trial court's dismissal of the plaintiffs' claims. *Id.* at 401. In so holding, we noted that the plaintiffs did not have standing to assert their "choses in action" in their individual capacities "independent of the personal representative and without probate court authority." *Id.* at 394, 396. We held that "[t]he Inlow Children may not evade the Probate Code by claiming a general standing to sue as expectant heirs or on any other basis deriving from their potential share of the estate." *Id.* at 395. Rather, the plaintiffs' sole litigation avenues were confined to Section 10 and Section 16. The plaintiffs in *Inlow,* however, did not invoke either of those statutory vehicles.

The *Inlow* court concentrated its discussion on Section 16 because it would have been the proper vehicle for the plaintiffs to have followed under those circumstances. Indeed, there was no indication that the defendants in *Inlow* had "concealed, embezzled, converted or disposed, of any real or personal property belonging to the estate of a decedent...." I.C. 29–1–13–10. Here, by contrast, Pheffer "filed her Complaint, alleging that [Ed III] had converted property belonging to [Ed Jr.]." [8] Appellant's Reply Brief at 4. Thus, Pheffer's complaint complied with Section 10. Accordingly, we conclude that Pheffer has standing to bring her claims.

---

7. We note that the Estate Action which has been stayed since 2002 is being pursued under Ind.Code § 29–1–13–16.

8. Pheffer also states in her appellant's brief: [Pheffer] filed [her] Complaint with the trial court to retrieve the Disputed Shares that [Ed III] took from [Ed Jr.]—which Disputed Shares belonged to [Ed Jr.'s] estate. *See* Ind. Code. § 29–1–13–10 (1999). [Pheffer] also filed a Petition to Compel Recovery, request-

ing the trial court to either direct National City (the Personal Representative) to pursue the recovery of the stock on behalf of [Ed Jr.'s] estate or to appoint a special administrator to pursue such claim. *See* Ind.Code § 29–1–13–16. Under the precedent set forth in *Inlow,* these are the only two means of intervention available to [Pheffer] as an heir of [Ed Jr.'s] estate. 787 N.E.2d at 392–394. Appellant's Brief at 14.

■ We next address Pheffer's arguments that her claims are not time barred. Pheffer does not argue that she filed her complaint within the applicable six-year limitations period under Ind.Code § 34–11–2–7, which dictates that actions "for recovering possession of personal property" or for "relief against frauds" "must be commenced within six (6) years after the cause of action accrues." Rather, Pheffer argues that "[her] Complaint, as amended … present [Ed Jr.'s] direct claims that [Ed Jr.] could have brought himself or that [the Guardians] could have pursued on his behalf while he was still living." Appellant's Brief at 13. Pheffer argues that, pursuant to Ind.Code § 34–11–6–1, her claims against Ed III were preserved and not time barred. Ind.Code § 34–11–6–1 provides that "[a] person who is under legal disabilities when the cause of action accrues may bring the action within two (2) years after the disability is removed."

Specifically, Pheffer argues that, because Ed Jr. was legally disabled from the time he gifted the Disputed Shares until he died, the time to commence the action was tolled during that period. Pheffer also argues that "an individual's cause of action survives and may be brought within 18 months of the person's death." *Id.* at 11 (citing Ind.Code § 34–11–7–1). Thus, because Pheffer's complaint was filed on June 28, 2001, well before the expiration of the eighteen-month period,[9] Pheffer argues that her action is not time barred.

Pheffer also argues that the trial court erred by "incorrectly [applying] a common law rule applicable to derivative claims," in concluding that Ind.Code § 34–11–6–1 was not applicable to the claims raised by Pheffer in her complaint. *Id.* at 15. Pheffer argues that "as previously acknowledged by [Ed III's] counsel before the trial court, the recovery [Pheffer] seeks 'is a direct claim'—not a derivative claim," Appellant's Reply Brief at 2 (citing Transcript at 40), and that therefore Ed Jr.'s status as legally disabled should have worked to preserve the claims until at least eighteen months after Ed Jr.'s death. Appellant's Brief at 11. Pheffer argues that the trial court's premise that her lack of incapacity worked to not toll the statute of limitation was error because Pheffer "was merely a prospective heir with no vested interest in the stock purportedly transferred to Ed III during [Ed Jr.'s] lifetime." *Id.* at 10.

■ Ed III argues that Pheffer's claims against Ed III "have been brought by her in a personal capacity. Whatever disability she alleges [Ed Jr.] to have been suffering from is therefore irrelevant to the issue at hand—whether the trial court properly dismissed *[Pheffer's] claims* against [Ed III]." Appellee's Brief at 6. Ed III argues that "Indiana courts already have a practice of barring derivative claims even where the victim's claims are protected by the disability statute."[10] *Id.*

9. We note that although Pheffer argues that, pursuant to Ind.Code § 34–11–6–1, the claims should survive until two years after Ed Jr.'s death, *see, e.g.,* Appellant's Brief at 9, Ind. Code § 34–11–7–1 states:

If any person entitled to bring, or liable to, any action, dies before the expiration of the time limited for the action, the cause of action:

(1) Survives to or against the person's representatives; and

(2) May be brought at any time after the expiration of the time limited within eigh-

teen (18) months after the death of the person.

Thus, Ind.Code § 34–11–7–1 allows for actions to be brought after a decedent die s(1) within the time limited for the action (two years in this case); or (2) eighteen months, whichever is *shorter.*

10. Ed III also suggests at various points in his brief that the date Pheffer filed her first amended complaint, April 3, 2003, should be the effective date Pheffer brought claims against Ed III because he was not named in

at 8 (quoting *Hansen v. Bd. of Trs. For Hamilton Southeastern Sch. Corp.*, 522 F.Supp.2d 1101, 1105 (S.D.Ind.2007) (citing *Jordan v. Deery*, 609 N.E.2d 1104, 1108 (Ind.1993), and *Barton–Malow Co., Inc. v. Wilburn*, 547 N.E.2d 1123, 1125–1126 (Ind.Ct.App.1989), *aff'd in part*, 556 N.E.2d 324 (Ind.1990)), *aff'd*, 551 F.3d 599 (7th Cir.2008)).

In *Hansen*, the court discussed how the dichotomy between direct and derivative actions pertains to statutes of limitation in Indiana:

> Indiana courts already have a practice of barring derivative claims even where the victim's claims are protected by the disability statute. Specifically, the Indiana Supreme Court concluded in *Jordan* that the derivative claims of a child's parents were barred by the statute of limitations even though the child's direct claim for medical malpractice was protected by her disability. *See Jordan*, 609 N.E.2d at 1108. Similarly, in *Barton–Malow Co.*, the Indiana Court of Appeals concluded that a wife's derivative claim for loss of consortium stemming from her husband's personal injury at work was barred even though her injured husband was protected by his mental disability. *See Barton–Malow Co. v. Wilburn*, 547 N.E.2d at 1126. These cases illustrate that Indiana courts have treated derivative and direct claims differently and that the courts do not give a derivative claim-holder the benefit of any disability provision.

522 F.Supp.2d at 1105.

 Thus, the propriety of Pheffer's claims turn on whether they may be properly classified as direct or derivative. Most claims are direct in nature. On the other hand, a derivative action is defined as "[a] lawsuit arising from an injury to another person, such as a husband's action for loss of consortium arising from an injury to his wife caused by a third person." BLACK'S LAW DICTIONARY 475 (8th ed. 2004). Although the injury underlying a derivative claim is caused to another, a successful derivative claimant such as on a claim for loss of consortium receives compensatory damages. *See, e.g., Haas v. Bush*, 894 N.E.2d 229, 233 (Ind.Ct.App.2008) ("[A] loss of consortium claim compensates the plaintiff for loss of companionship of the decedent."), *trans. denied; see also Ind. Patient's Comp. Fund v. Winkle*, 863 N.E.2d 1, 6 (Ind.Ct.App.2007) (discussing derivative claims in the medical malprac-

---

the original complaint. *See, e.g.,* Appellee's Brief at 8 ("Yet she did not file any such claims against anyone until June 2001, and, specifically, she did not file any such claims against [Ed III] until April 2003."). However, Ind. Trial Rule 15(C) states in pertinent part:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within one hundred and twenty (120) days of commencement of the action, the party to be brought in by amendment:

> (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits; and
> (2) knew or should have known that but for a mistake concerning the identity of the proper party, the action would have been brought against him.

Here, Ed III had notice of the institution of the action. Indeed, Ed III requested that the trial court order Pheffer to file her complaint. We therefore conclude that Pheffer's complaint against Ed III should relate back to the time of the original complaint, or June 28, 2001, well in advance of the eighteen months allowed by Ind.Code § 34–11–7–1.

tice context and noting that the Medical Malpractice Act allows for derivative claims to be brought by "a parent or parents, guardian, trustee, child, relative, attorney, or any other representative of the patient including claims for loss of services, loss of consortium, expenses, and other similar claims") (citing Ind.Code § 34–18–2–22), *reh'g denied, trans. denied.*

Here, however, Pheffer's claims raised pursuant to Section 10 request that the court "set aside the purported gift to [Ed III] of Monarch stock or, alternatively, equalize the respective ownership interests of [Pheffer] and [Ed III] in Monarch ... to effectuate the intent and language of the *Last Will and Testament of [Ed Jr.].*" Appellant's Appendix at 319. Thus, Pheffer is requesting that the Disputed Shares be included in Ed Jr.'s estate and equally divided, rather than simply transferring them over to her.

The primary benefactor of the claims raised by Pheffer is Ed Jr.'s estate. Accordingly, we conclude that Pheffer's claims under Section 10, which allows "the personal representative or any other person interested in the estate" to allege that "any person has ... concealed, embezzled, converted, or disposed, of any real or personal property belonging to the estate of a decedent ..." and add such property to the total estate, to be directly asserting Ed Jr.'s rights.[11] Therefore, Pheffer's claims enjoy the protection of the applicable tolling provision for legal disability, Ind.Code § 34–11–6–1, and are not time barred.[12] *Cf. Barton–Malow Co., Inc. v. Wilburn,* 556 N.E.2d 324, 326 (Ind.1990) (holding that the appointment of a guardian over an incompetent adult does not vitiate the protections provided by Ind.Code § 34–1–2–5, the predecessor to Ind.Code § 34–11–6–1).

Finally, as previously noted, pursuant to Ind.Code § 34–11–6–1 and Ind.Code § 34–11–7–1 Pheffer had eighteen months after Ed Jr.'s death on April 25, 2001 to bring her claim. Pheffer filed her complaint on June 28, 2001, well within the eighteen-month period. Consequently, we conclude that Pheffer's action was timely.

For the foregoing reasons, we reverse the trial court's order granting Ed III's motion to dismiss Pheffer's complaint and remand for further proceedings consistent with this opinion.

Reversed and remanded.

BARNES, J., and CRONE, J., concur.

---

11. Additionally, we note that actions taken by the personal representative directly assert the rights of a decedent. *See* Ind.Code § 29–1–13–3. We think it incongruous to read Section 10 as allowing for "the personal representative," and not "any other person interested in the estate," to directly assert the rights of a decedent under that section.

12. Because we conclude that Pheffer's claims are not time barred, we need not address Pheffer's argument that Ed III is equitably estopped from asserting a statute of limitation defense.