MAY, Judge.
[1] AM General LLC appeals summary judgment for James A. Armour. As AM General designated evidence to refute Armour’s contentions in its response to Armour’s motion for summary judgment, the summary judgment was in error. We reverse and remand for trial.
Facts and Procedural History
[2] The undisputed facts of this case, as iterated by the trial court, are:
Mr. Armour is .the former President, CEO and Chairman of AM General. He ' retired on or about January 2, 2012. From 2007 until his retirement, Armour had worked for AM General pursuant to a written Employment Agreement, entered into as of November 14, 2007. The Employment Agreement provides that AM General must “pay” Armour: (i) an annual salary; (ii) an annual bonus; and (iii) LTIP [Long-Term Incentive Payment] payments calculated according to a method set forth in Schedule A to the Employment Agreement. There is no dispute that the total amount of the LTIP payments yet owed to Armour under the Employment Agreement is $[redacted].
The LTIP provisions of the Employment Agreement further provide that the LTIP payment to Armour would be made “at the time bonus payments under Section 2(a)(ii) are paid to other employees of [AM General] with respect to the Employer’s 2011 fiscal year.” Armour was paid his annual bonus under Section 2(a)(ii) of the Employment Agreement for AM General’s 2011 fiscal year on or about January 20, 2012. According to AM General officers, other AM General employees also received their 2011 bonuses on or about January 20, 2012.
Rather than pay Armour the LTIP payment at the time fiscal year 2011 bonuses were paid, AM General began paying him cash over three payments. During 2012, AM General paid Armour a total of $[redacted] of the $[redacted] due to him pursuant to the LTIP provisions of the Employment Agreement. Specifically, AM General paid Armour: $[redacted] (less taxes) by check dated March 14, 2012; $[redacted] (less taxes) by check dated May 15, 2012; and $[redacted] (less taxes) by check dated August 15, 2012. Lhese payments were identified as LTIP payments on the *819 Earnings Statements accompanying the checks and in a reconciliation statement provided to Armour by the AM General human resources department. The difference between the $[redacted] due to Armour pursuant to the LTIP provisions of the Employment Agreement and the $[redacted] paid to him pursuant to the LTIP provisions of the Employment Agreement is $[redacted].
On or about December 14, 2012, Barry Schwartz, the Vice Chairman of [sic] the managing member of AM General’s parent company, sent Armour a Promissory Note (“Note”) from AM General, which Mr. Schwartz stated was “in satisfaction of remaining amounts owed to you under your November 2007 Employment Agreement.” The Note stated that it was intended to reflect “all amounts due and payable to the Holder [Mr. Armour] pursuant to that certain Employment Agreement ... dated as of November 14, 2007, between the Company [AM General] and the Holder, which is the gross amount of $[redacted] less $[redacted] in respect of applicable taxes and withholdings.” The Note was signed by AM General’s Assistant Treasurer.
Although it stated that the gross amount “due and payable” to Armour, as of December 14, 2012, was $[redacted], the Note contained many provisions that were inconsistent with AM General’s obligation under the Employment Agreement to “pay” Armour. For example, the principal amount of the Note was not payable until December 14, 2015 which was more than three years after the full amount of the $[redacted] LTIP payment to Armour had come due. In addition the Note was unsecured and was expressly subordinated to certain substantial bank debt (the “Bank Debt”) owed by AM General. As a result, the Note would not be payable in the event that AM General was in default on the Bank Debt and actually required that any money that might have been paid to Armour pursuant to the Note to [be] turned over to AM General’s creditors in the event that AM General defaulted on the Bank Debt after any payments had been made to Armour. Moreover, the Note could not be transferred prior to January 1, 2013, could be transferred thereafter only upon notice to AM General, purported to void any transfer made without notice to AM General, and required the Holder (apparently including any transferee) to acknowledge the existence and effect of unrelated security agreements between AM General and its creditors.
The Note stated that, Armour, “in accepting delivery of this Note, acknowledges that delivery of this Note satisfies all obligations of [AM General] under Section 2(a)(iii) [the LTIP payment provision] of the Employer Agreement.” Armour refused to accept the Note. Instead, through counsel, Armour rejected the Note and informed AM General that its failure to tender the full amount due under the LTIP by March 31, 2012, in cash, constituted a breach of the 2007 Agreement. Through his counsel, Mr. Armour demanded immediate payment of the outstanding amount owed to him under the LTIP. On December 21, 2012, Mr. Armour’s counsel returned the original Note to Mr. Schwartz.
On December 24, 2012, AM General commenced this action by filing a Complaint seeking declaratory judgment that its tender of the Note did not breach its obligations to pay Armour under the LTIP portions of the Employment Agreement. On February 27, 2013, Armour filed his Answer and Counterclaims, asserting that AM General’s tender of the Note breached its obligation *820 to pay him under the LTIP portions of the Employment Agreement.
(App. at 2-5) (redactions in original).
[3] On April 19, 2013, AM General filed an amended complaint for the public record excluding confidential financial information. On April 25) Armour filed a motion for summary judgment. On May 9, Armour answered the amended complaint and filed a counterclaim and demand for a jury trial. On May 28, AM General replied to Armour’s motion for summary judgment, designating the affidavit, of its Vice President of Human Resources, Gary Wuslich, as evidence to contradict Armour’s claim there was no genuine issue of material fact. On June 5, AM General filed its reply and affirmative defenses to Armour’s counterclaim. Armour replied to AM General’s response to Armour’s motion for summary judgment.’
[4] After a hearing, the trial • court granted summary judgment for Armour, finding 1) AM General breached the Employment Agreement when it did not make the LTIP payment in cash, and 2) the promissory note was not a cash equivalent. The trial court awarded Armour pre-judgment interest starting on January 20, 2012. The parties disputed the amount of prejudgment interest due and award of attorney’s fees, and after a hearing on those matters the trial court affirmed its summary judgment for Armour and indicated the amount of pre-judgment interest due.
Discussion and Decision
[5] We review summary judgment de novo, applying the same standard as the trial court. Hughley v. State, 15 N.E.3d 1000, 1003 (Ind.2014). Drawing all reasonable inferences in favor of the non-movirtg party, we will find summary judgment appropriate if the designated evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Id. A fact is material if its resolution would affect the outcome of the case, and an issue is genuine if a trier of fact is required to resolve the parties’ differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences. Id.
[6] The initial burden is on the summary-judgment movant to demonstrate there is no genuine issue of fact as to a determinative issue, at which point the burden shifts to the non-movant to come forward with evidence showing there is an issue for the trier of fact. Id. While the non-moving party has the burden on appeal of persuading us a summary judgment was erroneous, we carefully assess the trial court’s decision to ensure the non-movant was not improperly denied his day in court. Id.
[7] Our summary judgment policies aim to protect a party’s day in court. Id. While federal practice permits the moving party to merely show that the party carrying the burden of proof lacks evidence on a necessary element, we impose a more onerous burden — to affirmatively negate an opponent’s claim. Id. That permits summary judgment to “be precluded by as little as a non-movant’s ‘mere designation of a self-serving affidavit.’” Id. (quoting Devitch v. Fleming, 746 N.E.2d 993, 1000 (Ind.Ct.App.2001), tram, denied). Summary judgment is not a summary trial, and it is not appropriate just because the non-movant appears unlikely to prevail at trial. Id. at 1003-04. We “consciously err[ ] on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims.” Id. at 1004.
[8] In its memorandum in opposition to summary judgment, AM General argued there was a “genuine issue of material fact, including whether the promissory note tendered to Mr. Armour met the cri *821 teria for when an assignable promissory-note is the equivalent of cash.” (App. at 219.)[1] In support of its argument, AM General designated an affidavit from Gary L. Wuslich, the Vice President of Human Resources for AM General, in which Wus-lich indicated: “Unlike salary, which the Employment Agreement required to be paid in accordance with AM General’s usual executive payroll payment procedures, and unlike bonus payments, which the contract expressly stated must be paid in cash, the contract did not address the issue of how LTIP payments were to be made.” (Id. at 224.) Wuslich’s affidavit was accompanied by copies of the employment contract, amendments to the employment contract and correspondence from Armour’s attorney.
[9] Under Hughley, the designation of an affidavit offering an alternate version of the facts of the case is sufficient to defeat summary judgment. See Hugh-ley, 15 N.E.3d at 1003 (Hughley’s affidavit controverted State’s prima facie case and thus summary judgment was improper). Therefore, summary judgment in favor of Armour was improperly granted, and we reverse and remand for proceedings consistent -with this opinion.
[10] Reversed and remanded.
FRIEDLANDER, J., concurs.
VAIDIK, C.J., dissents with opinion.

. The dissent contends there exists no genuine issue of material fact because the Note does not conform to the legal definition of “payment” found in Indiana precedent. The dissent relies on Merchants Nat’l Bank & Trust Co. v. Winston, 129 Ind.App. 588, 159 N.E.2d 296, 302 (1959), in which we held, "in legal contemplation payment is the discharge of money or its equivalent of an obligation or debt owing by one person to another.” (Emphasis supplied.) Part of AM General’s argument in response to Archer’s motion for summary judgment examines whether the Note constitutes payment as a cash equivalent. As that issue requires not only the examination of the relevant law, but also the facts surrounding the conception and interpretation of the Employment and Redemption Agreements, summary judgment was improper.