ATTORNEYS FOR APPELLANT
John D. LaDue
Erin Linder Hanig
Ladue Curran & Kuehn LLC
South Bend, Indiana

Ronald L. Marmer
Marmer Law Offices LLC
Chicago, Illinois

ATTORNEYS FOR APPELLEE
James F. Groves
Lee Groves & Zalas
South Bend, Indiana

Daniel F. Wachtell
Elkan Abramowitz
Thomas M. Keane
Morvillo Abramowitz Grand Iason & Anello P.C.
New York, New York



FILED
Dec 16 2015, 3:02 pm
CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 71S03-1507-PL-407

AM GENERAL LLC,

*Appellant (Plaintiff below),*

v.

JAMES A. ARMOUR,

*Appellee (Defendant below).*

Appeal from the St. Joseph County Superior Court, No. 71D04-1212-PL-279
The Honorable Margot F. Reagan, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 71A03-1402-PL-58

**December 16, 2015**

**David, Justice.**

Today this Court holds that the promissory note in the present case does not satisfy the requirement of "payment" under the disputed employment contract. This issue arose when James

Armour's employment contract with AM General entitled him to payment of a long-term incentive plan (LTIP). When Armour retired in early 2012, he was to receive a lump sum LTIP payment on or about January 20, 2012. Instead, Armour started receiving quarterly installment payments in the form of checks, which Armour accepted.

However, in December of 2012, AM General attempted to make the final installment payment with a subordinate promissory note (the Note). The language within the Note provided that acceptance would function to fully release AM General from its obligations under the LTIP provision of the Employment Agreement. It also contained various other conditions on payment and transferability. Armour promptly rejected the Note, requesting full payment. This case reaches us today based upon Armour's claim that the Note did not constitute payment under the Employment Agreement.

We agree. The term "pay" within the Employment Agreement obligated AM General to make the LTIP payment to Armour in cash or a cash equivalent. The Note tendered to Armour was merely a conditional promise to pay and cannot constitute payment where no provision within the Employment Agreement permits payment in the form of a subordinate promissory note. As such, AM General breached the Employment Agreement when it failed to pay Armour the LTIP amounts when due. We affirm the trial court's award of summary judgment in favor of Armour, including the award of pre-judgment interest.

**Facts and Procedural History**

On November 14, 2007, James Armour entered into an employment contract (Employment Agreement) with AM General, LLC. Under that contract, AM General "shall *pay* to [Armour]" an annual salary, an annual bonus, and a long-term incentive plan (LTIP). (A230-31, A241.) (emphasis added). Under the Employment Agreement, the LTIP payment was to be made "at the time bonus payments under Section 2(a)(ii) are paid to other employees of [AM General] with respect to the Employer's 2011 fiscal year." (A242, Tr. Ct. Order at 3.) On or about January 2,

2012, Armour retired as President, CEO, and Chairman of AM General. However, on or about January 20, 2012, when Armour and other AM General employees received their 2011 fiscal year bonuses, Armour did not receive his LTIP payment.

Rather, Armour began receiving his LTIP payment in installment checks. The first payment was made by check dated March 14, 2012. The second payment was made by check dated May 15, 2012. The third payment was made by check dated August 15, 2012. Armour accepted each of the three installment payments. Then, Armour received a promissory note from AM General dated December 14, 2012. The Note promised to pay Armour the remaining amount owed under the LTIP provision of his Employment Agreement. The Note provided, "in accepting delivery of this Note, [the Holder] acknowledges that delivery of this Note satisfies all obligations of the Company under [the LTIP provision] of the Employment Agreement." (A161.) Full payment of the Note was not due until 2015, the Note was unsecured, transferable only upon certain conditions, and subordinate to other debts owed by AM General.

On December 20, 2012, Armour's attorney responded to the receipt of the Note, and expressly refused to accept the Note as payment under the Employment Agreement. The letter demanded payment of all of the amounts owed to Armour under the Employment Agreement. In response, AM General filed a complaint seeking a declaratory judgment that AM General had not breached the LTIP portion of its Employment Agreement with Armour. AM General expressed its belief that payment via the Note satisfied its obligations under the Employment Agreement and "was in the best interests [sic] of AM General." (A14.)

Armour counter-claimed, asserting that AM General breached the Employment Agreement when it failed to pay Armour the full LTIP payment when it was due in early 2012. Armour also asserted that AM General's attempt to satisfy its obligation to pay the remaining portion of the LTIP payment with a promissory note breached the duty of good faith and fair dealing. Subsequently, Armour sought summary judgment.

3

On June 27, 2013, a hearing was held on the summary judgment motion, and the trial court ultimately entered an order in favor of Armour. The trial court concluded that the plain meaning of "pay" or "payment" is "to exchange cash or the cash equivalent for goods or services." (Tr. Ct. Order at 7.) The trial court concluded that the Note tendered to Armour cannot be construed as cash or its equivalent. As such, AM General breached the Employment Agreement by failing to timely pay the LTIP in cash and by Armour not accepting the Note as a substitute for payment. AM General was ordered to pay the remaining balance owed to Armour, in addition to pre-judgment interest calculated from January 20, 2012, through the date of judgment.[1]

A split Court of Appeals reversed the trial court, finding a genuine issue of material fact in regards to how "payment" could be made under the LTIP provision of the Employment Agreement. AM General, LLC v. Armour, 27 N.E.2d 817, 821 (Ind. Ct. App. 2015). Chief Judge Vaidik dissented, agreeing with the trial court that the term "pay" within the Employment Agreement required payment to be in the form of cash or its equivalent, and a promissory note cannot satisfy AM General's obligation to pay absent an express agreement. Id. at 821. Chief Judge Vaidik would have affirmed summary judgment in favor of Armour. Id. at 824.

Upon Armour's petition, this Court granted transfer, thereby vacating the opinion of the Court of Appeals. Appellate Rule 58(A); AM General, LLC v. Armour, 34 N.E.3d 250 (Table). We now affirm the grant of summary judgment in favor of Armour and hold that the Note, as a matter of law, did not constitute payment under the Employment Agreement. As such, AM General breached its Employment Agreement with Armour. We also decline to find any genuine

---

[1] AM General was initially also order to pay attorney's fees, but this was later vacated.

issue of material fact in relation to the calculation of pre-judgment interest and affirm the trial court's award of pre-judgment interest.

**Standard of Review**

Orders for summary judgment are reviewed de novo, and require this Court to apply the same standard of review that is applied by the trial court. Indiana Restorative Dentistry, P.C. v. Laven Ins. Agency, Inc., 27 N.E.3d 260, 264 (Ind. 2015) (citing Hughley v. State, 15 N.E.3d 1000, 1003 (Ind. 2014)). The movant must demonstrate that "the designated evidence raises no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Id. Upon this showing, the nonmoving party then has the burden to demonstrate that there is a genuine issue of material fact. Id. All reasonable inferences will be construed in favor of the nonmoving party. Id.

**Discussion**

In the present case, Armour and AM General dispute whether the term "pay" within the Employment Agreement is ambiguous, and whether an ambiguity in relation to the acceptable form of payment requires consideration of extrinsic evidence. Alternatively, AM General asserts that even if payment, as a matter of law, means cash or its equivalent, the designated evidence creates a genuine issue of fact that the Note tendered to Armour is a cash equivalent, and payment via the Note satisfied AM General's obligation to pay the remaining LTIP amount under the Employment Agreement.

In the present case, the rules of contract construction govern the resolution of the disputed issue. The primary rule of construction first requires giving the words of the contract their plain and ordinary meaning. Ryan v. Ryan, 972 N.E.2d 359, 364 (Ind. 2012) (citation omitted). "Clear and unambiguous terms in the contract are deemed conclusive, and when they are present we will not construe or look to extrinsic evidence, but will merely apply the contractual provisions." Id.

5

Under Indiana precedent, the term "pay" or "payment" has a plain legal meaning that can be applied in the present case. As such, we conclude that under the Employment Agreement, AM General was required to make the LTIP payments in cash or its equivalent. Because our analysis also demonstrates that the promissory Note tendered to, but rejected by, Armour was not the equivalent to a cash payment, AM General breached the Employment Agreement and Armour was entitled to summary judgment. Furthermore, the trial court did not err by ordering pre-judgment interest to be calculated from the date payment was due under the Employment Agreement.

## I.    Payment Due Under the Employment Agreement

Armour argues that the form of payment due under the Employment Agreement presents a question of law, not fact. Moreover, Armour contends that no genuine issue of material fact was created based upon an affidavit submitted by the Vice President of Human Resources at AM General, which provided that, "unlike bonus payments, which the contract expressly stated must be paid in cash, the contract did not address the issue of how LTIP payments were to be made." (Pet Tr. at 6-7; App. at 224.) AM General contends, among other things, that because the form of payment was not specified in the Employment Agreement, the term "pay" was ambiguous and subject to interpretation based upon extrinsic evidence, such as the Redemption Agreement. The Redemption Agreement was executed on the same day as the Employment Agreement and did allow for specified payments to be made with a subordinate note under some circumstances.

First and foremost, we agree with Armour that the meaning of "pay" within the Employment Agreement presents a question of law. If ambiguity in a contract "arises because of the language used in the contract and not because of extrinsic facts then its construction is purely a question of law to be determined by the trial court." First Federal Sav. Bank of Indiana v. Key Markets, Inc., 559 N.E.2d 600, 604 (Ind. 1990) (internal citation omitted); See also Holiday Hospitality Franchising, Inc. v. AMCO Insurance Co., 983 N.E.2d 574, 577 (Ind. 2013) (explaining that contract construction "is particularly well-suited for de novo appellate review, because it *generally presents questions purely of law*") (emphasis added) (citation omitted). In the

6

present case, only the meaning of the word "pay" is disputed, which "has a well-understood meaning, and in legal contemplation payment is the discharge in money or its equivalent of an obligation or debt owing by one person to another." Egbert v. Egbert, 235 Ind. 405, 418, 132 N.E.2d 910, 917 (Ind. 1956) (internal quotation and citation omitted). Additionally, "the law declares that payment shall be made in money, unless there is an enforceable contract providing for payment in something of value other than money." Vansickle v. Ferguson, 122 Ind. 450, 23 N.E. 858 (1890). The affidavit submitted by AM General only demonstrates that the form of payment was not specified in the Employment Agreement. However, as stated above, where the form of payment is not specified, Indiana law mandates that either cash or its equivalent is required.

The parties do not dispute that AM General attempted to "pay" Armour with a promissory note, nor do they dispute that various conditions were placed upon the receipt of payment under the terms of the Note. Thus, the primary issue is whether the Note was a cash equivalent, which would be necessary to satisfy AM General's contractual obligation to pay Armour the LTIP amounts.

By looking to the Note itself, it is apparent that the Note is not the equivalent to cash. Rather, various limitations are placed upon receiving payment of the principal amount, which makes the Note starkly distinguishable from a cash payment. First, the principal of the Note was not due until three years after the LTIP payments were due under the Employment Agreement. Second, the Note was unsecured and subordinate to large bank debts that AM General owed. Finally, the Note could only be transferred under specific conditions. Thus, these conditions create the possibility that Armour may never receive actual payment, and even if payment were obtained, it would be delayed years beyond when it was due under the Employment Agreement. Moreover, the very definition of a promissory note demonstrates that the Note itself is not payment, but is merely a promise to pay some amount in the future. See Black's Law Dictionary 9th Ed., p.1162 (defining "promissory note" as "[a]n unconditional *written promise . . . to pay* absolutely and in any event a certain sum of money either to, or to the order of, the bearer or a designated person")

7

(emphasis added). Thus, AM General's tender of the Note, while it was a promise to pay, was not "payment" as demanded by the Employment Agreement.

AM General accurately recites that summary judgment may "be precluded by as little as a non-movant's mere designation of a self-serving affidavit." Hughley v. State, 15 N.E.3d 1000, 1003 (Ind. 2014) (internal quotation and citation omitted). However, upon review of Hughley, it is clear that a self-serving affidavit may only preclude summary judgment when it establishes that material *facts* are in dispute, and not when an affidavit merely disputes a legal issue. Here, AM General designated an affidavit which provided that the form of payment under the Employment Agreement was not specified. Yet, the affidavit in Hughley is distinguishable from that submitted by AM General because the affidavit in Hughley went to a disputed issue of fact.

In Hughley, the parties disputed what property may be subject to forfeiture, which required the parties to present evidence of how the property was used. Id. at 1004. Because the parties offered affidavits which supported conflicting inferences on how the property was used, the "trier of fact [was] required to resolve the parties' differing accounts of the truth." Id. (internal citations omitted). The use of property was a disputed issue of fact. Nothing within the language of Hughley indicates a change to the established understanding that when addressing a motion for summary judgment, "[t]he averment of facts which create *only an issue of law, rather than an issue of fact, will not defeat the motion*." Babchuck v. Heinold Elevator, Co., 246 N.E.2d 211, 216 (Ind. Ct. App. 1969) (emphasis added). The language within Hughley even maintains the distinction between questions of law and questions of fact by reiterating that "[s]ummary judgment 'is a desirable tool to allow the trial court to dispose of cases where *only legal issues exist*.'" Hughley, 15 N.E.3d at 1003 (quoting Clipp v. Weaver, 451 N.E.2d 1092, 1093 (Ind. 1983)) (emphasis added).

In the present case, the affidavit only solidifies what is apparent from the face of the Employment Agreement and what the parties already agree; the Employment Agreement does not specify a particular form in which the LTIP payments are to be made. To the extent that AM

8

General contends that the affidavit creates a genuine issue as to the permissible form of payment of the LTIP, the affidavit would only go to a legal issue, which can properly be decided on summary judgment. As explained above, the word pay is unambiguous and requires payment to be made in cash or its equivalent. All of the facts necessary to determine whether the Note is the equivalent to a cash payment is represented on the face of the Note. The parties do not dispute that the Note was not due until three years after it was delivered, was unsecured and subordinate to other AM General debts, and had limitations placed upon transfer.[2] As such, granting summary judgment in this context does not run contrary to our holding in Hughley because the affidavit submitted by AM General did not create a genuine issue of material fact, as the affidavits in Hughley did.

"When a court finds a contract to be clear in its terms and the intentions of the parties apparent, the court will require the parties to perform consistently with the bargain they made." Key Markets, Inc., 559 N.E.2d at 604. Because the promissory Note did not constitute "payment" under Armour's Employment Agreement, AM General breached its contract with Armour. Accordingly, we affirm the trial court's grant of summary judgment in favor of Armour.

## II.    Prejudgment Interest

AM General also contends that there was a genuine issue of material fact about the starting date for calculating the pre-judgment interest. The trial court ordered pre-judgment interest based upon a January 20, 2012 start date, which was the date the LTIP payment was due under the Employment Agreement. Moreover, the trial court relied upon the interest calculations as

---

[2] Although the parties disputed at oral argument Armour's ability to sell the Note, the determination of that fact is not necessary in light of all of the other non-disputed facts that establish that the Note did not constitute payment. In other words, the resolution of whether Armour could have sold the Note would not have been dispositive.

submitted by AM General's Vice President of Human Resources. The parties do not dispute that under the Employment Agreement, the LTIP payment was due on or about January 20, 2012. Rather, AM General argues that Armour made an oral agreement in December 2011 to accept LTIP payments in quarterly installments throughout 2012 and that his acceptance of three installment checks after the January contract deadline served to ratify the parties modified agreement that the LTIP payments were due "over the course of 2012." (Resp. Pet. Tr. at 3-5.) Due to this, AM General argues that pre-judgment interest should be calculated from December 31, 2012, not January 20, 2012.

Again, we disagree with AM General's contention that there is a genuine issue of material fact in relation to the start date for calculating pre-judgment interest. First, the Employment Agreement specifically provided that it could "not be modified except by a writing signed by the parties hereto." (A239.) AM General does not contend that there was ever a writing upon which Armour agreed to accept LTIP payments as installments throughout 2012. Rather, AM General asserts that a phone call was made to Armour in December 2011 "to explain to Mr. Armour the current circumstances at AM General and why it was in AM General's best interest to make the 2012 LTIP payments in quarterly installments." (A511.) Because Armour "did not reject the quarterly installment program," AM General believed that Armour had agreed to the program. (A512.) Armor contends that during that phone conversation he told AM General that it "did not have the right to defer making the LTIP payment . . . ." (A511.) Thus, while there is a genuine issue of fact regarding whether an oral agreement was ever made, summary judgment would still be appropriate if the alleged oral modification is otherwise invalid.

Even if we presume that the oral agreement occurred as AM General contends and that the oral modification could supersede the contractual provision requiring all modifications to be in

10

writing,[3] "the modification of a contract, because it is also a contract, requires all of the requisite elements of a contract." City of Indianapolis v. Twin Lakes Enterprises, Inc., 568 N.E.2d 1073, 1085 (Ind. Ct. App. 1991) (citation omitted). Thus, a modification must have adequate consideration. Hinkel v. Sataria Distribution & Packaging, Inc., 920 N.E.2d 766, 770 (Ind. Ct. App. 2010) (internal citation omitted). "Consideration consist of either a benefit to the promisor or a detriment to the promisee." Id. "In other words, consideration requires a bargained-for exchange." Id. Here, even if the oral agreement occurred as AM General contends, Armour received nothing in exchange for AM General making the LTIP payments in four installments, rather than as a lump sum payment on January 20, 2012. Under the alleged modification, AM General only agreed to do what it already had an obligation to do under the existing Employment Agreement; pay the full amount owed under the LTIP provision.[4] See Seastrom, Inc. v. Amick Const. Co., Inc., 315 N.E.2d 431, 433 (Ind. Ct. App. 1974) (finding no "new and distinct consideration" to support a contract modification where the promisor was "doing no more than he was obligated to do under" the existing contract). Accordingly, even if the oral agreement had occurred, it fails as a valid contract modification for lack of consideration.

AM General also argues that Armour waived the argument that payment was due at the time specified in the Employment Agreement by accepting three installment payments. However, the express terms within the contract undercut this argument. The Employment Agreement provides that "[t]he failure of either party to insist upon the strict performance of any of the terms, conditions, and provisions of this Agreement shall not be construed as a waiver or relinquishment of future compliance therewith, and said terms, conditions, and provision shall remain in full force

---

[3] Even though we remain skeptical that such an oral agreement did occur, this Court has recognized that "[e]ven a contract providing that any modification . . . must be in writing, nevertheless may be modified orally." Sees v. Bank One, Indiana, N.A., 839 N.E.2d 154, 161 (Ind. 2005) (citations omitted).

[4] The parties do not dispute the amount of money that Armour was entitled to under the LTIP provision.

11

and effect." (A238.) Where an employment contract contains such a clause, Indiana courts have upheld a finding that no waiver of contractual obligations have occurred. See Sallee v. Mason, 714 N.E.2d 757, 762 (Ind. Ct. App. 1999) (determining that even though no evidence supported a finding that annual salary reviews or adjustments required by the contract had ever occurred in the past, the plaintiff had not relinquished her right to demand an annual review because the employment contract provided that "the failure to enforce any provision or obligation under this Agreement shall not constitute a waiver therefore or serve as a bar to the subsequent enforcement of such provision or obligation"). Armour did not relinquish his right to demand the LTIP payments at the time they were due under the Employment Agreement because he subsequently accepted three installment payments.

Because any modification to the Employment Agreement regarding when the LTIP payments were due failed for lack of consideration, there is no genuine issue of fact regarding the trial court's determination that pre-judgment interest should be calculated from January 20, 2012. Moreover, since the trial court relied upon the affidavit and exhibits submitted by AM General in determining the amount of pre-judgment interests that should be awarded based upon the January 20, 2012 start date, we affirm the trial court's award of pre-judgment interest.

**Conclusion**

AM General failed to satisfy its obligation under the Employment Agreement LTIP provision when it offered Armour a subordinate promissory note as payment. As a matter of law, payment under the contract required the LTIP to be paid in cash or a cash equivalent. The various conditions placed upon the Note demonstrates that the Note was not a cash equivalent. We affirm the trial court's grant of summary judgment in favor of Armour, awarding him the remaining portion of his LTIP payments. We also affirm the trial court's order awarding Armour pre-judgment interest calculated from January 20, 2012, the time at which the LTIP payment was due under the Employment Agreement.

Rush, C.J., Dickson, Rucker, and Massa, J.J., concur.